IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| GREGORY ROSE and CATHERINE ROSE, and the marital community composed thereof, | ) ) ) ) | No. 32284-0-III |
| Plaintiffs, | ) ) | |
| ROBERT MITCHELL, | ) ) | UNPUBLISHED OPINION |
| Appellant, | ) ) ) | |
| v. | ) ) ) | |
| FMS, INC., d/b/a OKLAHOMA FMS, INC., an Oklahoma Corporation, | ) ) ) | |
| Respondent. | ) ) | |

FEARING, J. — We review for the second time a challenge to sanctions imposed on Robert Mitchell, the attorney for plaintiff Catherine and Gregory Rose, for frivolous pleadings and bad faith and harassing litigation conduct. The trial court granted sanctions of $66,399.93 in the form of reasonable attorney fees and costs incurred by the Roses' opponent, FMS, Inc.

Because this case comes to us for a second time and because the trial judge has

been retired for three years, our decision includes an extensive review of the accounting for attorney fees incurred by FMS. The review is in three appendices. In turn, we issue a comprehensive ruling about the fees to be awarded to FMS against attorney Robert Mitchell. Once again, we affirm in part and reverse in part the award. We reduce the amount of the sanctions to $11,416.80.

## FACTS

Appellant, attorney Robert Mitchell, represented plaintiffs Catherine and Gregory Rose in an unfair debt collection lawsuit against FMS, a debt collection company. Catherine Rose purchased goods from Kohl's Department Store with a store credit card. In early 2010, the Roses filed bankruptcy and stopped making payments to Kohl's. Kohl's assigned the debt to FMS, a debt collection agency based in Oklahoma, to collect on missed payments. In March 2010, FMS initiated dunning calls and letters. FMS' call log showed 149 calls made to reach the Roses by telephone. The Roses retained attorney Robert Mitchell, who represented them in another matter, to demand that FMS cease calling.

On April 22, 2010, attorney Robert Mitchell addressed and sent a letter to FMS' headquarters in Tulsa. Enclosed with the letter was a copy of an unfiled summons and complaint that asserted violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, breaches of the Washington Collection Agency Act, ch. 19.16 RCW, infringements of Washington's Consumer Protection Act, ch. 19.86 RCW, and tort

2

claims for emotional distress. Mitchell's letter informed FMS that Catherine and Gregory Rose had yet to file the lawsuit, but that FMS needed to respond to avoid a default. Mitchell mentioned the Roses' desire to resolve the dispute without the need for prolonged litigation, and he recommended that FMS forward a reasonable proposal to settle. Mitchell included the following paragraph in his April 22 letter:

> If this dispute cannot be resolved, and if it becomes necessary to file this complaint with the Court, I will be bound by RCW 19.86.095 to file a copy of the complaint with the Washington State Attorney General's office. Harumi Tolbert at the Department of Licensing has also requested that I provide her with copies of all complaints filed with the Attorney General's office.

Clerk's Papers (CP) (303802)[1] at 315.

Kathryn Martin, FMS' general counsel, responded on June 15, 2010 via a letter attached to an e-mail message to Robert Mitchell. The message denied engaging in harassing debt collection behavior. Martin claimed that Catherine and Gregory Rose's debt to Kohl's was not in "default," but was instead "outstanding." CP (303802) at 320. The message did not explain any distinction between an "outstanding" debt and a debt in "default." The message informed Mitchell that FMS had returned the account to Kohl's. Martin did not offer any settlement of the dispute.

---

[1] For purposes of this appeal we are transferring a copy of the clerk's papers filed in case no. 30380-2-III into this case. We use "CP (303802) __" when referencing the first appellate record, and simply "CP" for the second, present appeal.

On June 15, 2010, Robert Mitchell replied, by e-mail message, to Kathryn Martin's e-mail. Mitchell asked if FMS wished to tender an offer to settle before the Roses proceeded with discovery and motions. Within minutes, Martin responded that FMS' president was out of the country for one week. Martin asked Mitchell for a demand from the Roses. Mitchell responded ten minutes later:

> In cases of this type (**too many telephone contacts**) my office typically shoots for damages, costs, and attorney's fees of $5,000, plus a letter promising to cease similar violations in this state.
> In exchange, the case will not be filed with the Court, the Attorney General's Office, or the Department of Licensing. Plaintiffs will waive all claims and commit to confidentiality.
> I understand if you have to wait until Monday to respond.

CP (303802) at 322.

On June 25, 2010, Kathryn Martin, on behalf of FMS, offered to settle the claims of Catherine and Gregory Rose for $500. Martin reiterated that FMS had not violated the law. Martin ended her settlement offer letter:

> If this offer is not acceptable to your client, FMS is prepared to vigorously defend its position in court.

CP (303802) at 325.

On Sunday, June 27, 2010, Robert Mitchell sent Kathryn Martin, by e-mail, a copy of a letter to the court clerk requesting filing of the summons and complaint, a copy of a letter to the Washington Attorney General's Office informing it of the lawsuit against FMS, a copy of a letter to the state Department of Licensing informing it of the lawsuit,

4

requests for admission, a corporation deposition notice, interrogatories, and requests for

production of documents. The deposition notice scheduled the corporate deposition for

August 6, 2010, in Spokane. The e-mail message informed Martin that Mitchell intended

to mail the letters and discovery requests on Monday.

Robert Mitchell's June 27 e-mail message also attached a letter of the same date to

Kathryn Martin. The letter read, in part:

> . . . Finally, you should note that your answer to Plaintiffs'
> complaint is overdue. Therefore, if I do not receive an answer by the close
> of business on Friday, July 2, 2010, I intend to file a motion for default and
> default judgment.
>
> Your position that: "*Merely dialing a telephone without making
> contact or leaving a message does not a communication make*" is
> untenable. Using that same logic, if a debt collector telephones a debtors'
> home 100 times in one day, but only actually speaks to the Debtor or leaves
> a message once, then the collector has not communicated with the debtor in
> such a manner as to harass, intimidate, threaten or embarrass. Your logic is
> unsound and not based on any published case I am aware of. Moreover, I
> am confident that Plaintiff will have absolutely no problem convincing the
> Court that 32 telephone calls in a 17 day period is excessive and made for
> the sole purpose of harassment, especially where this case involves an out-
> of-state collection agency harassing local citizens and illustrating contempt
> for this State's consumer protection laws.
>
> In this case, Defendant telephoned Plaintiffs and discussed the debt
> with Plaintiffs. At that time, Plaintiffs noted Defendant's telephone
> number(s). Therefore, each and every one of Defendant's subsequent
> telephone calls "communicated" who was calling *(a debt collector),* and
> why they were calling *(to collect a debt).* Because Plaintiffs knew that it
> was Defendant telephoning to collect a debt, each telephone call made to
> Plaintiffs represented a "communication." Moreover, Defendant's
> communications were excessive where Defendant telephoned Plaintiffs at
> least 32 times in a 17 day period.
>
> Plaintiffs were extremely insulted by the fact that Defendant made a
> nuisance offer $500 after clearly violating Plaintiffs' rights while engaging

in unfair collection practices in violation of state and federal statute. Plaintiffs were even more insulted by the defense proffered because it cemented Plaintiffs' suspicions that Defendant has absolutely no intention of ceasing the abusive collection practices in the future, and that Defendant has no respect for Washington collection laws or Washington consumers.

As a result, Plaintiffs have instructed me to vigorously prosecute this case and attempt to obtain an injunction preventing Defendant from blatantly violating our state collection and consumer protection statutes in the future. To that end, I have filed the complaint with the Court, the Attorney General's Office, and the Department of Licensing.

If your client would like to change its position and avoid having to defend this matter, avoid having to tender the matter to its insurance carrier, or avoid having to deal with the unintended consequences of this litigation, Plaintiffs would be willing to settle this matter in exchange for a promise that Defendant will stop telephoning Washington debtors more than 3 times in a given week, plus $4,950 damages, costs, and attorney's fees.

CP (303802) at 379-80.

On Monday, June 28, 2010, FMS general counsel Kathryn Martin responded to Robert Mitchell's June 27 message. She stated that she does not accept service on behalf of her client and Catherine and Gregory Rose would need to serve process on the company's registered agent. Mitchell replied:

I do not understand the purpose or intent of your email. Service of process of the summons and complaint was made upon FMS's registered agent for service of process in April. If you believe the case needs to be re-served after it is filed with the Court you are mistaken.

You appeared on behalf of FMS through your communications with my office. Therefore, discovery was mailed and emailed to you. If you do not consider your communications with my office to represent an "appearance" in this case (which would be completely contrary to Washington law) then please inform me immediately and I will default FMS today for failure to appear. The motion will not require any notice to you or FMS if you have not "appeared" in this case.

Additionally, you should note that requests for admissions are

6

deemed admitted if not answered within 30 days. Therefore, if you choose to simply ignore the discovery because it was not mailed to FMS's registered agent, a summary judgment motion will be filed against FMS based upon FMS's admissions to all relevant facts in this case. Due to the injunctive relief contained in the prayer for relief, a summary judgment will likely lead to FMS losing its ability to collect debts in Washington. I remind you that this case involves fee-shifting statutes. Therefore, the more games you and your client play, the more costs and attorney's fees FMS will pay at the end of the day.

I am more than happy to engage in litigation with FMS. However, it may behoove you and FMS to seriously consider ceasing the gamesmanship regarding this case. This is not my first rodeo. I practice in this state and I understand Washington law and civil procedure. I am familiar with the Court that will hear this case. FMS missed the deadline to remove this case to federal court. As a result, this case is not going to turn out the way you hope.

CP (303802) at 382. Litigation proceeded.

## PROCEDURE

### The Roses Sue FMS for Unfair Debt Collection Practices

On June 29, 2010, Catherine and Gregory Rose filed their summons and complaint against FMS in Stevens County. Correspondence from Robert Mitchell declares that FMS' registered agent in Washington was served with the summons and complaint on April 27. Our record contains no affidavit of service. On July 12, 2010, the law firm Martens + Associates, P.S, entered a notice of appearance on behalf of FMS. The same day, Robert Mitchell e-mailed Richard Martens, at the law firm, the Stevens County case number and copies of the discovery requests he had previously sent to FMS.

In early August 2010, Robert Mitchell, on behalf of Catherine and Gregory Rose,

and Martens + Associates attorney Steven Stolle, on behalf of FMS, exchanged didactic

e-mail regarding whether the Roses' summons, complaint, and discovery requests had

been properly served. On August 3, Mitchell wrote to Richard Martens and inquired

about receiving discovery responses. On August 5, Steven Stolle, rather than Richard

Martens, responded:

> Richard Martens forwarded your email of August 3, 2010, inquiring about discovery. Neither Mr. Martens nor I are aware of this office receiving any discovery from plaintiffs in this case. Can you confirm that discovery was served and, if so, how?
>
> Also, it is unclear when the complaint was served. Can you forward a copy of the proof of service?
>
> Thank you.

CP (303802) at 418. Robert Mitchell replied the following day:

> Unless Mr. Martens has completely failed to communicate with his client since appearing in this case nearly 1 month ago, and unless he also intends to deny receiving my responsive email on July 9, 2010, then he knows very well that this case was served upon the registered agent on April 27, 2010, more than 3 months ago. He also has electronic copies of Plaintiffs' discovery requests, in addition to the actual discovery requests he should have requested and received from his client.
>
> . . . .
>
> In the future, it may behoove Mr. Martens to exhibit a higher level of candor when dealing with my office. He might also be mindful of his ethical duties as well as his duties under the civil rules regarding intentionally delaying litigation, intentionally and unnecessarily increasing the costs of litigation, and his duty of candor. Finally, the more gamesmanship played in this litigation, the more it will ultimately cost FMS, because this case involves fee-shifting statutes which only inure to the benefit of the Plaintiffs.

CP (303802) at 420.

8

No. 32284-0-III
*Rose v. FMS, Inc.*

Steven Stolle, enamored by the word "behoove," wrote to Robert Mitchell on August 6:

It would "behoove" you to maintain a modicum of professionalism when dealing with opposing counsel, and accusing my office of unethical conduct right out of the box is not a good start. I have done nothing to warrant it, and I frankly don't appreciate it. While I have no intention of responding to everything in your email, I address the pertinent points as follows.

First I requested a courtesy copy of the proof of service you filed in the court docket I can obtain it by other means, but I have never refused or been refused a copy of such documents in the past. Instead of responding to this very reasonable request by either providing a copy or politely declining, you chose to engage in a rant about how we know we were served. What I know is that my client received a copy of the summons and complaint. If you want me to acknowledge that the alleged service was proper, I will have to see a copy of the proof of service. That's what the document is for, and you should serve a copy on the other parties to the case in any event.

Second, while I was unaware of any emailed courtesy copies, electronic service without prior agreement of the parties is not recognized under the Civil Rules. See CR 5(b)(7). We have not so agreed. I also do not know how you allegedly served my client with discovery. We have located your email attaching PDF copies of plaintiffs' discovery, none of which is signed by you, nor do they have the required certificate of service. According to you, you sent it one day, June 27, 2010, and it was acknowledged by our client the next, June 28, 2010. Effecting service either by personal service or by mail between Spokane and Tulsa, Oklahoma, in one day would, I think, be a first. So I also question the validity of service of the original discovery requests on my client.

Third, service of discovery prior to filing the complaint on June 29 was invalid in any event. See CR 33(a). If you want your discovery answered, then properly serve it on my office.

Finally, I note that the only appearance on behalf of my client in this case was made by my office. So I don't know what you mean by my client having "appeared" through its in-house counsel. You may have served the summons and complaint some time ago, but the complaint was only filed on June 29, 2010, and only my office entered a notice of appearance.

9

It is regrettable that this case has started off as it has, but I still hope for a better working relationship going forward.

CP (303802) at 423-24. Robert Mitchell, in turn, wrote to Stolle, on August 7:

Technicalities, misapplication of applicable law, and gamesmanship. Your client received the discovery by mail and email and confirmed receipt by email. You also received a copy via email. You now admit to receiving discovery by email.

If you had problems with the timing and/or form of discovery, professional courtesy would dictate that you speak up when you received the discovery. Waiting more than a month to deny receipt of the discovery and then objecting to the timing and form of the discovery is gamesmanship and it illustrates a lack of candor. Quite simply, you received the discovery by email and then denied ever seeing any discovery. You now admit receiving the discovery. That smacks of untruthfulness.

Your client "appeared" in this case as that term applies in this jurisdiction. Not coincidentally, your client played the same stalling games you are now continuing.

Again, this is a fee-shifting statute and my fees have now been unnecessarily increased as a result of these games.

I will telephone your office as previously stated to conduct a CR 26i conference.

CP (303802) at 423.

On August 10, 2010, the parties' attorneys conducted a CR 26(i) discovery conference. On August 17, 2010, FMS responded to the Roses' first set of interrogatories, requests for production, and requests for admissions. The responses were unsatisfactory. On August 20, 2010, Robert Mitchell e-mailed Steven Stolle and requested another CR 26(i) conference concerning FMS' objections to some of the Roses' discovery requests and seeking dates in September for FMS' corporate deposition. Stolle responded, in part:

> . . . In the meantime, if you could tell me what the issues are maybe
> I can address them so that the conference is unnecessary. Please fill me in,
> and I'll see what I can do.
> As for my client's deposition, I will have to get in touch with them
> next week. I note, however, that I have a three week trial starting in Clark
> County on September 20th. So it would be almost impossible to do FMS's
> deposition in September. Also, there are no direct flights to Tulsa. So it's a
> three day trip; a day to Tulsa, a day for the dep., then a day to get back. We
> can discuss that more later, but just so you are aware.

CP (303802) at 428-29. Mitchell replied on August 22:

> I will telephone your office on Wednesday at 2:00 p.m.
> The lack of responses and numerous frivolous objections make the
> deficiencies too numerous to list in a single email.
> Given the history of this case, it appears that the best way to resolve
> this situation will be to file a motion to compel and alert the Court to the
> discovery difficulties to date.
> In the alternative, Plaintiffs offer to settle this case in exchange for a
> promise to cease the offending collection practices and payment of $4,900.
> Please note that my motion to compel will include a request for
> sanctions/terms.
> *Your client may want to consider settling this case before it becomes*
> *prohibitively expensive.*

CP (303802) at 428 (emphasis added).

In late August, Steven Stolle and Robert Mitchell attempted to negotiate a

settlement through e-mail. FMS, while claiming it would be granted summary judgment,

increased its settlement offer to $1,000. The Roses rejected the offer, and countered with

an offer of $4,900 to settle the case. FMS then served the Roses with interrogatories and

requests for production of documents and requests for admission.

11

No. 32284-0-III
*Rose v. FMS, Inc.*

On September 1, 2010, Steven Stolle sent Robert Mitchell a proposed stipulated protective order to allow for FMS' production of documents it considered confidential and proprietary. The letter cited a case from this court to support FMS' refusal to answer some of the Roses' requests for admission. Mitchell responded the same day:

Again, you do not have the privilege of citing cases and not answering discovery. If you wish to avoid answering discovery, your burden is to conduct a CR26 conference and move the Court for a protective order. I expect you know that.

I received and reviewed the audio tape of the conversation between our clients. It is clear from that conversation that Mrs. Rose did not want your client telephoning her. In fact, I would submit that your client violated the law by repeatedly asking Mrs. Rose for other contact information after Mrs. Rose instructed your client to cease workplace contacts. Instead of terminating the workplace telephone contact when the debtor demanded, your client continued the collection attempts by demanding that Mrs. Rose provide other telephone numbers at which your client could continue the harassment campaign.

Your client's position that Mrs. Rose invited your client to telephone her at other telephone numbers is untenable. She clearly refused to provide other telephone numbers and was openly hostile to the idea of your client telephoning her at all.

I also note that your client placed 249 telephone calls in approximately a two month period.

Obviously, we will need to know each and every telephone number your client called and the reason for the telephone calls.

This looks like a telephone harassment campaign. Despite your client's carefully crafted position, it is highly unlikely that your client will escape liability in this instance, especially if the conversation with Mrs. Rose is the cornerstone of your client's defense.

Litigating this case in face of a fee-shifting strict-liability statute is not a very wise decision.

Plaintiffs' offer of $4,900 is still on the table if your client desires an inexpensive out.

Otherwise, I anticipate receiving your motion for protective order.

12

I will also be drafting discovery requests to determine every telephone number your client called in attempt to collect this debt.

CP (303802) at 464.

On September 7, 2010, FMS filed its answer, asserting ten affirmative defenses and counterclaiming for attorney fees on the ground that the Roses brought suit in bad faith. On September 9, 2010, Robert Mitchell sent Steven Stolle another e-mail:

I understand that the attached stip. may have worked in other cases. However, this is a consumer protection case in which Plaintiffs seek to obtain injunctive relief to protect the citizens of this state. Plaintiffs have already forwarded a copy of the complaint to the Attorney General's Office and the Department of Licensing.

History proves that those agencies will contact my office and request evidence and documents to support the State's independent investigation.

Your client holds a license to collect debts in this state. That is a public license and this is a public matter. My clients absolutely want any and every bit of information obtained to be available to the public and government agencies, which is in keeping with Plaintiffs' quest for injunctive relief designed to protect the public.

This is a public matter and we cannot consent to an order limiting public scrutiny of your client's unfair business practices.

Therefore, we cannot stipulate to the protective order and we intend to file a motion to compel responses to the discovery requests.

Please provide your dates of availability for a discovery conference next week.

I am also still awaiting your client's dates of availability for a CR 30(b)(6) deposition.

CP (303802) at 467.

On October 27, 2010, Catherine and Gregory Rose responded to FMS' discovery requests, and moved for partial summary judgment on liability. The Roses filed a joint

declaration in support of summary judgment. The declaration averred that FMS

telephoned "our home, and our cellular telephones incessantly." CP (303802) at 42.

On Saturday, October 30, 2010, Steven Stolle wrote to Robert Mitchell:

> My client is available for a CR 30(b)(6) deposition in Tulsa
> November 9, 10, 11, 12, 16, and 17. Given the plaintiffs' filing for
> summary judgment, you may want to wait until after that motion is decided,
> since unnecessary costs are not recoverable, but that is your call. If you
> decide to put it off to December, let me know and I will obtain additional
> dates.
> I will need to take your clients' depositions before FMS's response
> to plaintiffs' MSJ [motion for summary judgment] is due, particularly in
> light of their supporting declaration, to avoid the likelihood of a CR 56(f)
> motion. Please provide dates for their depositions from November 8th
> through the 16th. I can do both depositions the same day, and I am willing
> to set them either somewhere in Stevens County or at your Spokane office,
> as you prefer.

CP (303802) at 474. Mitchell responded the same day with an e-mail on which the trial

court would later order sanctions based in part on its content:

> "Tulsa." That is a good one. I thought we had a conversation
> regarding gamesmanship early on in this case? It is clear from your
> previous written communications that you know very well that your client
> needs to appear in Stevens County for the 30(b)(6) deposition.
> Based on your response, I will be telephoning your office at 10:00
> a.m. on Monday, Tuesday, and Wednesday of this coming week to engage
> in a CR26i conference. I intend to file a motion for discovery sanctions
> against you and your client.
> It is your right to file a CR 56f motion in response to Plaintiffs'
> Summary Judgment Motion. However, such a motion would be vigorously
> opposed.
> I again remind you and your client that this is a fee-shifting statute
> and the more work you and your client force me to do, the more your client
> and/or its insurance company will eventually pay my client at the end of the
> day. *I am willing to litigate this case in perpetuity if that is what your*

14

*client chooses.* However, doing so will result in your client paying substantially more costs and fees than it would otherwise pay.

With the above in mind, I again urge your client to be reasonable and settle this case rather than engaging in vindictive discovery and needless motion practice.

CP (303802) at 476 (emphasis added).

Attorneys lack a social life. Therefore, Steven Stolle replied on the evening of

Saturday, October 30. Stolle wrote:

I have no intention of producing my client for deposition in Washington, as you well know. It is well settled that a corporate defendant is deposed where it is headquartered. I have always referenced making my client available in Tulsa, and your reference to my acknowledging anything to the contrary earlier in the case is completely false.

I have given you dates for my client's deposition in Tulsa, and requested the same from you for your clients. Your response—that you would oppose a CR 56(f) motion—appears to be a refusal to produce your clients for deposition. Accordingly, if I do not receive dates for your clients' depositions by the end of the day Tuesday, we will simply note them up for a date and location in Stevens County of my choosing.

. . . .

I have tried to work with you on at least a professionally courteous basis from the beginning, but I find your constant belligerence, threats, and attempts to dictate to and lecture me tiresome, grossly unprofessional, and flat unacceptable. The suggestion that you can simply dictate when we will have a discovery conference by harassing me with phone calls is just the latest example. You can, of course, bring any motion you want, consistent with CR 11 and the Rules of Professional Conduct, but I will be putting copies of your emails both to me and my client before the court in response and in support of a cross-motion. Judges don't like this kind of nonsense, but I'm perfectly willing to let the court in Stevens County decide who is being unreasonable and violating the Civil Rules and RPCs if that's what you want.

CP (303802) at 479.

15

On Monday, November 1, 2010, Robert Mitchell wrote to Steven Stolle:

> I intend to telephone you between 3 and 4 p.m. on Tuesday for our CR 26i conference.
>
> It may be helpful for you to provide me with the "well settled" authority that a corporate defendant is deposed where it is headquartered. It may also benefit you to be prepared to explain why it took three months for you to provide dates for your client's deposition.
>
> My clients cannot be deposed on the same day as they have scheduling conflicts.
>
> Greg Rose is available for a deposition on November 10, 2010.
>
> Catherine Rose can attend a deposition on November 12, 2010.
>
> I am not interested in hosting the depositions at my office. You will have to arrange for them to occur elsewhere. Please inform us of times and locations for the depositions.
>
> Please provide me with a detailed explanation of why you believe Plaintiffs' responses to Defendant's discovery requests are "grossly inadequate" so that we may cure any defects.
>
> I again remind you and your client that this is a fee-shifting statute and the more work you and your client force me to do, the more your client and/or its insurance company will eventually pay my client at the end of the day.

CP (303802) at 481.

On November 2, Steven Stolle penned and e-mailed a three-page letter containing legal authority to support FMS' position that it could be deposed only in Tulsa. The letter acknowledged that: "No Washington appellate court has ruled on the particular issue of where a corporate defendant is deposed under CR 30(b)(6)." CP (303802) at 482. In the end, Mitchell, on behalf of the Roses, relented and agreed to depose FMS in Oklahoma.

On November 1, 2010, two months after FMS' original request, the Roses finally agreed to FMS' proposed stipulated protective order. FMS filed a cross motion for summary judgment, on November 2. The motion asked for dismissal of the Roses' claims. In a memorandum opposing FMS' summary judgment motion, Robert Mitchell wrote that, after Catherine Rose told FMS not to call anymore, FMS left "at least 19 more voicemail messages" with the Roses. CP (303802) at 571. Mitchell referred the reader to Exhibit B attached to a declaration signed by him for support of this factual assertion. Exhibit B attached to Robert Mitchell's declaration included FMS' answers to interrogatories. The answers did not state that FMS left nineteen voicemail messages.

On November 4, 2010, Steven Stolle wrote to Robert Mitchell that he believed most of the Roses' answers to interrogatories and responses to requests for production were insufficient, deceptive, incorrectly claimed as privileged, or inconsistent. In particular, Stolle took issue with the Roses' assertion that they retained neither their Kohl's billing statements, nor their telephone records. On November 9, 2010, Mitchell and Stolle held another CR 26(i) conference in which they agreed:

> The only direct supplementation that plaintiffs agreed to and need to make are: (1) identify their telephone carriers so that defendant can subpoena the pertinent records, and (2) *submit paperwork to Kohl's and/or [C]hase to obtain records on the debt at issue to produce to defendant.*
> We agreed that the other discovery issues raised in my letter of November 4th, can be resolved at Mr. Rose's deposition on the 12th, including—without waiving any attorney-client privilege—when plaintiffs first contacted you, the fee arrangement, other lawsuits in which they are

17

named parties, answers to requests for admission, and their document retention practices.

CP (303802) at 536 (emphasis added).

On November 12, 2010, Steven Stolle deposed Gregory Rose. During his testimony, Gregory stated that he usually traveled for work during the week, but he also operated a window cleaning business with local customers. He declared that Catherine Rose handled the couple's finances. He did not believe Catherine had discarded their phone or Kohl's billing statements. Gregory Rose admitted that the Roses kept a log of calls received from FMS after being instructed to do so by their attorney. He testified that he could not remember Robert Mitchell's and his signing of a retainer agreement, but they had not discussed compensation beyond the Roses providing goods or services in kind.

On November 30, 2010, the trial court entertained oral argument on the cross motions for summary judgment. The trial court granted summary judgment in favor of FMS and dismissed the Roses' claims with prejudice.

*The Roses Move for Reconsideration*

On December 10, 2010, Catherine and Gregory Rose filed a motion for reconsideration. The couple argued that newly discovered evidence warranted granting their motion. In support of the motion for reconsideration, Catherine Rose filed a declaration, in which she stated that she "was finally able to find my Kohl's records in an

unmarked storage tub in my garage, which was mixed with other storage boxes." CP (303802) at 262. The Kohl's records purportedly demonstrated that the Roses' account was in default, a key legal issue at summary judgment. The records also allegedly showed that the disputed debt qualified as "consumer debt" under the Fair Debt Collection Practices Act. Robert Mitchell asserted in a separate affidavit that FMS "never provided Plaintiffs with copies of the original Kohl's credit card agreement or any billing statements, despite a proper Request for Production." CP (303802) at 250. Mitchell also asserted that FMS failed to produce any documents in response to the stipulated protective order it executed with the Roses.

Catherine and Gregory Rose failed to timely serve or schedule the motion for a hearing on their motion for reconsideration and later withdrew it. FMS, unaware of the hearing due to lack of service, made no filings in response. The Roses chose not to appeal the dismissal of their claims.

FMS Moves for Sanctions Against Robert Mitchell

On February 7, 2011, FMS moved for sanctions against Robert Mitchell under CR 11(a), CR 26(g), and CR 56(g). FMS contended that Mitchell violated CR 11(a) by filing a frivolous lawsuit and by treating opposing counsel poorly. FMS argued that Mitchell breached CR 26(g) by serving voluminous and unnecessary discovery requests, wrongfully insisting on deposing FMS in Spokane, and preparing and signing false and misleading answers to FMS' discovery requests. Finally, FMS maintained that Mitchell

19

contravened CR 56(g) by filing blank copies of the Roses' discovery requests to insinuate that FMS did not answer discovery, by misrepresenting the fact that he possessed a copy of Kohl's credit card agreement prior to the trial court's ruling on summary judgment, and by filing a joint declaration of Catherine and Gregory Rose that Mitchell knew was untruthful and conflicted with Gregory's deposition testimony. FMS also complained about Mitchell's reporting the case to the Attorney General's Office and Department of Licensing. FMS insisted that the reports to government agencies obliged it to defend the case more aggressively. FMS stressed that Mitchell's "considered, willful misconduct" was for the sole purpose of increasing the cost of litigation to FMS, such that it would settle an otherwise non-meritorious case. CP (303802) at 625.

Robert Mitchell filed pleadings opposing the motion for sanctions. On February 15, 2011, the trial court heard oral argument on FMS' motion for sanctions. The trial court informed the parties that she would issue a letter ruling at a later date.

On March 4, 2011, before the trial court issued its ruling, Robert Mitchell filed a "supplemental response to defendant's motion for sanctions." CP (303802) at 665-98. In the response, Mitchell maintained that he recently received newly discovered evidence relevant to FMS' assertion that the Roses' entire lawsuit was frivolous. Mitchell filed several of Kohl's internal copies of the Roses' account statements, which he argued showed the merit of the Roses' lawsuit against FMS. A February 22, 2011 letter from Kohl's accompanied the records and stated: "As this satisfies the terms of the subpoena,

20

Kohl's will now consider this matter closed." CP (303802) at 672.

FMS complained about the manner in which Robert Mitchell obtained Catherine and Gregory Rose's financial records from Kohl's. During discovery, Mitchell and Steven Stolle agreed that the Roses would submit paperwork to Kohl's to obtain the debt records. Mitchell would then forward copies of the records to Martens + Associates. Nevertheless, Mitchell sent the request to Kohl's accompanied by a power of attorney from the Roses on December 1, 2010, the day after the trial court granted summary judgment to FMS. In his December 1 letter to Kohl's, Mitchell asked Kohl's to notify him "if you require a subpoena to obtain any of the requested information." CP (303802) at 814. On January 10, 2011, before receiving a response from Kohl's, Mitchell served Kohl's registered agent in Washington with a subpoena duces tecum, requesting the same information as in his December 1 letter.

On March 11, 2011, FMS filed a surreply on its motion for sanctions. The surreply informed the court that Robert Mitchell failed to serve FMS' counsel with a copy of the subpoena duces tecum on Kohl's, as required by CR 45(b)(2). FMS argued that Mitchell should be sanctioned for telling the court, at the February 15 sanctions hearing, that he served a subpoena on Kohl's "months ago," when it had only been six weeks. CP (303802) at 702.

On March 21, 2011, Robert Mitchell filed two "supplemental declarations," regarding FMS' sanctions motion. Mitchell attached additional documentation to the

declarations that he received from Kohl's on March 17, 2011 regarding the Roses' account and copies of e-mail correspondence between Steven Stolle and him. Mitchell failed to sign one of the declarations.

On March 24, 2011, FMS filed a second surreply and motion to strike Mitchell's second and third declarations as unauthorized by the civil rules, irrelevant to FMS' motion for sanctions, and an inappropriate attempt to continue discovery after dismissal of the Roses' claims. FMS also requested additional attorney fees on the basis that Mitchell's declarations relied on evidence obtained through improper use of a subpoena in violation of CR 45(b)(2).

On April 11, 2011, Catherine and Gregory Rose filed a CR 60 motion to vacate the trial court's entry of summary judgment. The Roses argued that the order should be vacated because: (1) the Roses received new evidence from Kohl's, as a result of the subpoena duces tecum, after the time to move for reconsideration, (2) FMS fraudulently asserted the Roses' account was not in default, which formed the basis of the court's decision on summary judgment, and (3) equity dictated vacation in light of this new evidence. The trial court later determined the motion to vacate the judgment was not properly before the court and struck it.

Also on April 11, Catherine and Gregory Rose moved for CR 11 sanctions against FMS. The Roses repeated their assertion that FMS intentionally and falsely claimed the Roses' Kohl's account was not in default when FMS began its attempts to collect and that

this false representation merited CR 11 sanctions. The motion for sanctions included another declaration from Robert Mitchell with exhibits containing more documents recovered from Kohl's as a result of the subpoena duces tecum and yet another copy of the Roses' discovery requests to FMS. Finally, on April 11, Mitchell filed his third "supplemental declaration" regarding FMS' motion for sanctions, to which he again attached the same Kohl's account documents. On April 12, 2011, the Roses filed a motion to compel FMS' deposition.

On April 18, 2011, FMS filed an objection and third surreply in response to Mitchell's third supplemental declaration. FMS asked the court to strike the offending declaration and award FMS costs and fees incurred in addressing Mitchell's numerous filings. On April 19, 2011, the trial court entered an order of voluntary dismissal of FMS' counterclaims.

On July 11, 2011, the trial court issued a letter opinion. The opinion struck Robert Mitchell's supplemental declarations as an untimely surreply to FMS' reply materials and struck pleadings related to records obtained by the subpoena duces tecum on Kohl's since Mitchell issued the subpoena in violation of CR 45(b)(2). The opinion also struck the Kohl's records on the basis that a declaration of a records custodian did not identify and authenticate the records. Finally, the July 11 letter ruling granted FMS' motion for sanctions against Robert Mitchell under all three civil rules asserted by FMS. The trial court wrote:

23

First: The suit was filed without sufficient inquiry into the facts and the law as required by CR 11(a). Mr. Mitchell filed the suit without sufficient research, factual or legal, into the question of whether the account was "in default" as that term of art applies to the various causes of action sued under.

Second, CR 26(g) would require sanctions, since the discovery violations defendant has claimed plaintiffs' counsel committed are established. Mr. Mitchell did not make the efforts required by the discovery rules but instead answered the interrogatories and requests for admission and production in an offhand way, in a blatant attempt to thwart the reasonable discovery efforts of the defendant. And, Mr. Mitchell promulgated burdensome and unnecessary discovery in an effort to bully the defendant into a settlement.

Third, CR 56(g) also provides a basis for sanctions with respect to the materials submitted in regard to the summary judgment issues, for the reasons stated in the defendant's motion for this basis.

I further conclude that there were misrepresentations of fact in Mr. Mitchell's oral statements made to the court on February 15, 2011, as argued in [Second Surreply of Defendant]. Further, Mr. Mitchell's incessant filing of declaration after declaration was clearly designed to delay the inevitable as well as to increase the costs of the litigation for the defendant.

Thus, the motion for sanctions with respect to each of these four subject areas should be granted.

CP (303802) at 998.

On July 26, 2011, Martens + Associates, the law firm representing FMS, submitted a lengthy and detailed accounting of its attorney fees and costs charged in defending the Roses' lawsuit and in bringing the motion for sanctions against Robert Mitchell. FMS requested $31,348.11 in attorney fees and costs. On August 25, 2011, Robert Mitchell filed a declaration in opposition to FMS' motion for sanctions. The declaration characterized the fees requested by FMS as outrageous and "not reasonable or

necessary because the issues involved in this case were simple, strait forward, and did not require substantive legal work." CP (303802) at 1084. Mitchell submitted declarations from Gregory Rose, the Spokane County Bar Association, and legal practitioners attesting to his professionalism and honesty. On September 2, 2011, FMS filed a reply in support of its submission of fees and costs, asking the trial court to strike several of the declarations filed by Mitchell as lacking in foundation or irrelevant.

On September 22, 2011, the trial court issued a second letter opinion granting FMS' request to strike several of the declarations filed by Robert Mitchell, finding all costs and fees incurred by FMS reasonable in the defense of this case, and setting a lodestar multiplier of 1.5 times the actual billed rate of $168 per hour to $250 per hour. The trial court found:

> Mr. Mitchell's hourly rate, as a much less experienced attorney, is $200; and Mr. Martens and Mr. Stolle's articulate presentation of these very complex issues and their impeccably prepared pleadings throughout these proceedings are ample evidence of their high level of skill. An hourly rate of $250 is reasonable for these attorneys' time.

CP (303802) at 1135. The trial court also wrote: "In the event of a motion for reconsideration, I will continue to handle this case to its conclusion as a pro tem under the applicable statute allowing retired judges to finish out their assigned cases." CP (303802) at 1136. She instructed FMS' attorneys to draft a proposed order incorporating her letter ruling and to note presentation without oral argument.

On October 10, 2011, Robert Mitchell filed an objection to FMS' proposed order. Mitchell requested that the sanctions be entered against "Robert Mitchell, Attorney at Law, PLLC," and not him as an individual. He sought a jury trial in light of the court's decision to employ a lodestar multiplier and issue "approximately $20,000 in strictly punitive contempt sanctions." Finally, he requested a stay of enforcement of judgment pending appeal. CP (303802) at 1140. On October 13, 2011, the trial court entered an order granting FMS sanctions in the amount of $70,546.44. Trial judge Rebecca Baker retired on October 15, 2011. On October 24, 2011, FMS filed a response to Mitchell's objections, informing the trial court that "Robert W. Mitchell, Attorney at Law, PLLC" dissolved in 2008 and no longer existed as a legal entity in Washington.

Robert Mitchell Appeals the First Entry of Sanctions against Him

On November 8, 2011, Robert Mitchell appealed the trial court's entry of sanctions against him. On April 30, 2013, by unpublished opinion, this division of the Washington Court of Appeals reversed the trial court's imposition of sanctions on all grounds and remanded to the trial court. We determined that the trial court abused its discretion in awarding sanctions under CR 11(a) as the Roses' lawsuit was not frivolous. We further held that the trial court's findings of fact and conclusions of law in its order imposing sanctions under CR 26(g) and CR 56(g) were insufficient to support an award of sanctions.

26

We summarized our rulings in three passages within the April 2013 opinion. On page 2, we wrote:

> We reverse the CR 11 (a) sanctions because we conclude the underlying litigation was not baseless or frivolous.

CP at 90. On page 9 we declared:

> Considering all, we conclude the court lacked tenable grounds to impose CR 11 sanctions. While arguably applying the correct legal standard, a matter not on review here, the court adopted an unreasonable view in sanctioning Mr. Mitchell. . . . The Roses could reasonably believe from their contract that their account was in default. . . . As noted, Mr. Mitchell had a good faith basis under CR 11(a) to believe he was justified in bringing suit to protect his clients. . . .

CP at 97. Finally, on page 11 of the opinion, we wrote:

> Without more, we vacate the CR 26(g) and CR 56(g) sanctions because we cannot meaningfully review them as required in *Burnet* [*v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997)], and remand to allow, but do not direct, further proceedings. The trial judge has retired. A new judge will have to, if asked, review the record and assess anew whether sanctions are warranted under CR 26(g) and CR 56(g); if sanctions are warranted they would be limited to violations of CR 26(g) and CR 56(g) without consideration of the CR 11(a) sanctions rejected above.

CP at 99.

FMS filed a motion for reconsideration that asked this court to clarify whether FMS could seek CR 11 sanctions on remand on grounds other than a frivolous lawsuit. In its motion, FMS noted that the trial court imposed CR 11 sanctions against Robert Mitchell for frivolous pleadings and harassing conduct in addition to and other than filing the lawsuit. FMS aptly noted that our April 2013 decision did not directly address

27

whether the trial court on remand could impose CR 11 sanctions for conduct other than filing the suit. On May 23, 2013, this court denied FMS' motion. This court awarded $1,158.49 in costs to Mitchell as the prevailing party on appeal.

### FMS Renews Its Motion for Sanctions on Remand

On October 31, 2013, FMS moved the trial court for entry of an amended order granting sanctions against Robert Mitchell. FMS requested that: (1) Judge Rebecca Baker, who presided over the earlier motions, sit as judge pro tempore and decide FMS' motion on remand, as allowed under RCW 2.08.180; (2) the trial court find FMS' new allocation and designation of fees for sanctions reasonable in light of this court's opinion, and (3) the trial court enter more specific findings of fact and conclusions of law in order to re-impose sanctions on all previous grounds, except that Mitchell filed a frivolous case under CR 11. Attorney Steven Stolle included a new, detailed allocation of fees, costs, and expenses, segregated by the rules the trial court previously found that Mitchell violated. FMS noted the motion for a hearing before Judge Baker on November 13, 2013.

On November 6, 2013, Robert Mitchell filed a motion for a continuance, stay of proceedings, assignment of new judge, and recusal of Judge Baker. Mitchell argued that language from this court's opinion mandated Judge Baker's recusal, or, in the alternative, recusal was appropriate to avoid the appearance of unfairness. Mitchell asked for a continuance to review and respond to the large number of exhibits filed by FMS in its

motion. In the event Judge Baker did not recuse herself, Mitchell sought a stay of proceedings in order to allow him to file a RAP 12.9(a) motion with this appeals court to order the lower court to comply with the mandate.

On November 7, 2013, Judge Baker heard argument on Robert Mitchell's motions. FMS responded to Mitchell's motions on the same day as this hearing. The trial court denied Mitchell's motion for recusal and for a stay, but granted his motion for a continuance. The trial court set a hearing for FMS' sanctions motion on December 4, 2013.

On November 21, 2013, Robert Mitchell responded to FMS' motion for sanctions. He argued that the trial court could not re-impose CR 11 sanctions, FMS' other bases for seeking sanctions under CR 26 and CR 56 were unfounded, and no lodestar adjustment upward was justified because FMS' attorneys were paid on an hourly basis. On November 22, Mitchell moved this appeals court to recall its mandate in his first appeal "to assure compliance with its decision remanding to allow, but not direct, further proceedings in front of a *new* judge." *Rose v. FMS, Inc.*, No. 30380-2-III, Motion to Recall Mandate (Wash. Ct. App. Nov. 22, 2013). On November 26, 2013, this court denied Mitchell's motion for immediate review.

On December 4, 2013, the day of the hearing on FMS' motion for sanctions, Robert Mitchell filed a motion and memorandum for judicial notice of adjudicative facts.

The trial court heard oral argument on FMS' motion for sanctions and reserved its ruling. The trial court entered an order to confirm its previous rulings on November 7.

On February 10, 2014, the trial court granted FMS' requested sanctions in the amount of $66,399.93. The lower court entered thirty-nine findings of fact and twenty-nine conclusions of law. The trial court awarded FMS sanctions under CR 11, 26, and 56. The "amount awarded" includes attorney fees, paralegal fees, and expenses. The trial court also awarded FMS' fees incurred in bringing the motion for sanctions in the amount of $17,209.60. Judge Baker discounted the total amount of fees, costs, and expenses by $1,158.49, the amount of costs awarded to Mitchell by this court, for a total judgment of $65,241.44. An excerpt of the relevant findings of fact and conclusions of law is contained in appendix 1 at the end of this opinion.

## LAW AND ANALYSIS

On appeal, Robert Mitchell presents four principal arguments. First, the trial court erred in denying his motion for Judge Baker to recuse herself from hearing FMS' renewed motion for sanctions on remand. Second, the trial court erred in re-imposing CR 11 sanctions on remand. Third, the trial court failed to enter factual findings sufficient to award CR 26 and CR 56 sanctions under the Supreme Court's decision in *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997). Fourth, the trial court failed

30

to properly segregate compensable and noncompensable attorney fees in issuing sanctions under CR 26(g) and CR 56(g).

We reject Robert Mitchell's first and second contentions. Because of our comprehensive review of the trial court's findings of fact, we do not directly address whether the findings were sufficient under *Burnet*. We agree that the trial court failed to correctly isolate awardable and nonawardable fees. Therefore, we reduce the amount of the award. We first address a procedural issue raised by FMS.

### Challenges to Findings of Fact

Before addressing Robert Mitchell's assignments of error, we resolve a technical objection asserted by FMS. Robert Mitchell attached an eighteen page "Appendix responding to the trial judge's findings of fact and conclusions of law," in which he assigns error to every trial court finding and conclusion, except for the decision to discount the sanctions against him by the amount of costs this appeals court awarded to him for substantially prevailing on his first appeal. Br. of Appellant at 24. FMS contends that an appendix is not the proper way to brief, contest, or argue the validity of a trial court's findings of fact and conclusions of law.

RAP 10.3(g) provides, in relevant part:

> A separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number. The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto.

31

Even if a party fails to assign error to each challenged finding, an appellate court may review such a finding so long as the nature of the challenge is clear and the finding is set forth in the appellate brief. *State v. Estrella*, 115 Wn.2d 350, 355, 798 P.2d 289 (1990). Nevertheless, this court does not permit litigants to use incorporation by reference as a means to argue on appeal or to escape the page limits for briefs set forth in RAP 10.4(b). *Diversified Wood Recycling, Inc. v. Johnson*, 161 Wn. App. 859, 890, 251 P.3d 293 (2011).

Robert Mitchell's opening brief, with the appendix, is 41 pages, nine pages shy of the page limit. RAP 10.4(b). The appendix assists this court to discern which findings of fact are most relevant to the issues raised by Mitchell. Because the appendix does not allow Mitchell to avoid compliance with the page limitation and because this court may discern the nature of Mitchell's challenge, this court need not and will not strike the appendix nor consider the challenges to the findings of fact waived.

## Recusal of Judge Baker

Robert Mitchell contends that the trial court erred in denying his motion that she recuse herself from hearing FMS' motion for sanctions on remand. Mitchell argues that this court's April 2013 opinion in *Rose v. FMS, Inc.*, no. 30380-2-III, directed a new judge to reassess whether sanctions were appropriate on remand. Mitchell mentions in passing Judge Baker's comment that she needed to avoid prejudice and promote the

32

appearance of fairness. Nevertheless, Mitchell does not contend Judge Baker should have recused herself on either ground.

FMS argues that this court's earlier opinion recognized Judge Baker's retirement and the possibility that another judge would need to hear further motions. Nevertheless, according to FMS, this court did not order removal of Judge Baker. FMS also contends that Judge Baker was statutorily entitled to hear FMS' motion on remand, pursuant to RCW 2.08.180. We agree with FMS.

None of the three judges on this panel sat on the panel that issued this court's April 30, 2013 decision. During oral argument, we asked whether this panel should seek input from members of the prior panel concerning the meaning of the earlier decision. Despite posing this question, we have not sought input from members of the earlier panel. We consider such an action to be similar to taking evidence outside the presence of the parties and thus inappropriate.

Typically a party moves for a judge's recusal by filing an affidavit of prejudice against the judge before she "shall have made any ruling whatsoever in the case." RCW 4.12.050. The judge will recuse herself and transfer the case, if the affidavit sufficiently establishes prejudice. RCW 4.12.040. A judge's decision not to recuse herself is reviewed for abuse of discretion. *In re Marriage of Farr*, 87 Wn. App. 177, 188, 940 P.2d 679 (1997).

Judge Rebecca Baker retired in October 2011, before the final order of sanctions

33

was entered on the first occasion. She remained retired during proceedings on remand from this court's April 2013 decision. Nevertheless, she issued several discretionary decisions before her retirement. She granted FMS' motion for sanctions, although she reserved the amount of sanctions. RCW 2.08.180(2) provides, in relevant part:

> ... [I]f a previously elected judge of the superior court retires leaving a pending case in which the judge has made discretionary rulings, the judge is entitled to hear the pending case as a judge pro tempore without any written agreement.

A trial court's decision to award sanctions under CR 11 or 26 is discretionary. *See Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 218, 829 P.2d 1099 (1992); *Magana v. Hyundai Motor Am.*, 167 Wn.2d 570, 582, 220 P.3d 191 (2009); *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 338, 858 P.2d 1054 (1993). Accordingly, under the statute, Judge Baker's retirement did not exclude her from deciding FMS' motion for sanctions on remand.

Robert Mitchell maintains that this court's April 2013 opinion ordered Judge Baker to recuse herself. In the opinion, we wrote: "The trial judge has retired. A new judge *will have to*, if asked, review the record and assess anew whether sanctions are warranted under CR 26(g) and CR 56(g)." CP at 99. (emphasis added).

This court's April 2013 opinion did not expressly remove Judge Baker from further hearings. The phrase "will have to" connotes a mandate that another judge hear any further sanction motions. But that phrase should be read in the context of the history

34

of the case and other language in the opinion. The preceding sentence noted that Judge

Baker had retired. In our 2013 opinion, we assumed, without addressing, that Judge

Baker would be unavailable to hear additional motions. We presupposed that, with Judge

Baker's retirement, another judge would "have to" appear for further motions.

Reading our April 2013 opinion as a whole, we conclude this court did not remove

Judge Baker from hearing further motions. We incorrectly assumed that Judge Baker

would be unavailable because of retirement. Removal of a trial court judge from

presiding over further hearings in a case is an uncommon decision. Such a ruling would

be expressed in direct words of removal preceded by the reasons for the removal.

CR 11 Sanctions

Robert Mitchell next argues that our April 2013 decision precluded any sanctions

award under CR 11 on remand. We disagree.

The critical passages within our April 2013 opinion fall on pages 2, 9 and 11. The

respective excerpts read:

> We reverse the CR 11 (a) sanctions because we conclude the
> underlying litigation was not baseless or frivolous.

CP at 90. On pages 9 and 10, we declared:

> Considering all, we conclude the court lacked tenable grounds to
> impose CR 11 sanctions. While arguably applying the correct legal
> standard, a matter not on review here, the court adopted an unreasonable
> view in sanctioning Mr. Mitchell. . . . The Roses could reasonably believe
> from their contract that their account was in default. As noted, Mr.
> Mitchell had a good faith basis under CR 11 (a) to believe he was justified

in bringing suit to protect his clients. . . .

CP at 97. Finally, on page 11 of the opinion, we wrote:

> Without more, we vacate the CR 26(g) and CR 56(g) sanctions because we cannot meaningfully review them as required in *Burnet*, and remand to allow, but do not direct, further proceedings. The trial judge has retired. A new judge will have to, if asked, review the record and assess anew whether sanctions are warranted under CR 26(g) and CR 56(g); if sanctions are warranted they would be limited to violations of CR 26(g) and CR 56(g) without consideration of the CR 11(a) sanctions rejected above.

CP at 99.

A broad reading of the opinion could lead one to the conclusion that the trial court could impose no CR 11 sanctions on remand. We wrote, among other words, that "the court lacked tenable grounds to impose CR 11 sanctions." CP at 90. Nevertheless, our mention of CR 11 sanctions was within the context of filing a lawsuit. We reversed CR 11 sanctions because "the underlying litigation was not baseless or frivolous." CP at 90. Robert Mitchell had a "good faith" basis "in bringing suit." The April 2013 opinion did not analyze whether CR 11 sanctions could be assessed because of other alleged misconduct of Mitchell. FMS asked for a clarification of the ruling via a motion for reconsideration. We summarily denied the motion. We conclude that the trial court was not prevented from awarding sanctions under CR 11 for reasons other than the lawsuit's frivolity.

Merits of Appeal

We now address the merits of Robert Mitchell's assignments of error. In doing so, we review each billing entry of the law firm, Martens + Associates, to determine if the entry qualifies for reimbursement from Robert Mitchell, rather than remanding the case again for the trial court to assess sanctions consistent with this opinion. We engage in this detailed assessment from a desire to bring finality to a case already on appeal once and to a suit whose trial judge has been retired for three years. Our itemized evaluation is contained in appendix 2.

In *Yousoufian v. Office of Ron Sims, King County Executive*, 168 Wn.2d 444, 229 P.3d 735 (2010), our state high court imposed a daily penalty for violation of the Public Records Act, ch. 42.56 RCW, rather than remanding the suit to the trial court for the selection of a penalty rate. The Supreme Court noted that the trial court should generally be afforded discretion in selecting the daily penalty, but the elevated court did not follow this rule because the case had already been remanded once and the trial court again did not follow the law in entering a penalty amount. The Supreme Court, in light of the unique circumstances and procedural history of the case, established the rate on its own in order to bring the dispute to closure. The court emphasized that its decision should not be read as an invitation to trial courts to accede to having penalties set at the appellate court level. In this appeal, we follow the Supreme Court's example when reviewing the accounting provided by Martens + Associates and imposing a definitive sanctions

37

amount.

We review a trial court's order imposing sanctions for abuse of discretion. *Manteufel v. Safeco Ins. Co. of Am.*, 117 Wn. App. 168, 175-76, 68 P.3d 1093 (2003); *State v. S.H.*, 102 Wn. App. 468, 473, 8 P.3d 1058 (2000). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Havens v. C & D Plastics, Inc.*, 124 Wn.2d 158, 168, 876 P.2d 435 (1994); *Saldivar v. Momah*, 145 Wn. App. 365, 402, 186 P.3d 1117 (2008).

FMS seeks sanctions against Robert Mitchell under CR 11, CR 26, CR 56, and the trial court's inherent authority. We limit our review of the sanctions to violations of the civil rules and refuse to review the trial court's imposition of sanctions based on the trial court's intrinsic authority. When a specific sanction rule applies, the inherent power of the trial court to sanction does not apply. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d at 340 (1993); *Saldivar v. Momah*, 145 Wn. App. at 402.

CR 11(a) proscribes, in part:

> The signature of . . . an attorney constitutes a certificate by the . . . attorney that the . . . attorney has read the pleading, motion, or legal memorandum, and that to the best of the . . . attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is well grounded in fact;
> (2) it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

The rule applies to pleadings in addition to the complaint starting the lawsuit.

CR 11 omits any direction to the courts to impose sanctions for its violation. Nevertheless, Washington courts may impose appropriate sanctions for violations of the rule. *Conom v. Snohomish County*, 155 Wn.2d 154, 163-64, 118 P.3d 344 (2005); *In re Marriage of Lee*, 176 Wn. App. 678, 690-91, 310 P.3d 845 (2013). If a party violates CR 11, the court may impose an appropriate sanction, which may include reasonable attorney fees and expenses. *Just Dirt, Inc. v. Knight Excavating, Inc.*, 138 Wn. App. 409, 417, 157 P.3d 431 (2007). The fact that a party's action fails on the merits is by no means dispositive of the question of CR 11 sanctions. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d at 220; *Eller v. E. Sprague Motors & R.V.'s, Inc.*, 159 Wn. App. 180, 190, 244 P.3d 447 (2010).

CR 26(g) reads:

> **Signing of Discovery Requests, Responses, and Objections.** Every request for discovery or response or objection thereto made by a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name. . . . The signature of the attorney or party constitutes a certification that the attorney or party has read the request, response, or objection, and that to the best of their knowledge, information, and belief formed after a reasonable inquiry it is:
> (1) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;
> (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and
> (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in

39

controversy, and the importance of the issues at stake in the litigation. . . .

If a certification is made in violation of the rule, the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney fee.

Likewise, CR 56(g) provides:

**Affidavits Made in Bad Faith.** Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney fees, and any offending party or attorney may be adjudged guilty of contempt.

Under the three court rules, the trial court may order an attorney to pay the reasonable attorney fees and costs incurred by the opponent when the attorney files frivolous pleadings, acts in bad faith, harasses, or causes needlessly delay.

In our review of the billings of Martens + Associates, we adhere to a bedrock principle of appellate review. We will not reverse any finding of fact entered by the trial court when the finding is supported by substantial evidence. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959). For example, we believe that the law firm spent excessive time on many tasks. Many tasks were performed by one or more attorneys, when only one attorney was needed for the project. Nevertheless, since the trial court found the amount of time reasonable, we do not reverse reimbursement of

the task.

Limits apply to our conferring the trial court deference in fact finding. We must determine whether the trial court's findings of fact were supported by substantial evidence in the record. *Landmark Dev., Inc. v. City of Roy*, 138 Wn.2d 561, 573, 980 P.2d 1234 (1999). Substantial evidence is evidence which, viewed in the light most favorable to the party prevailing below, would persuade a fair-minded, rational person of the truth of the finding. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). If the findings are adequately supported, we must still decide whether those findings of fact support the trial court's conclusions of law. *Landmark Dev.*, 138 Wn.2d at 573; *Tegman v. Accident & Med. Investigations, Inc.*, 107 Wn. App. 868, 874, 30 P.3d 8 (2001). We must also decide whether the award conforms to Washington law, including our April 2013 decision, which has become the law of the case. *Folsom v. County of Spokane*, 111 Wn.2d 256, 263, 759 P.2d 1196 (1988); *State v. Worl*, 129 Wn.2d 416, 425, 918 P.2d 905 (1996).

In addressing the merits of this appeal, we rely on several other principles. If an attorney fees recovery is authorized for only some of the claims, the attorney fees award must properly reflect a segregation of the time spent on issues for which attorney fees are authorized from time spent on other issues. *Kastanis v. Educ. Emp. Credit Union*, 122 Wn.2d 483, 201-02, 859 P.2d 26, 865 P.2d 507 (1993); *Gaglidari v. Denny's Rests., Inc.*, 117 Wn.2d 426, 450, 815 P.2d 1362 (1991); *Travis v. Wash. Horse Breeders Ass'n*, 111

41

Wn.2d 396, 411, 759 P.2d 418 (1988). This must include, on the record, a segregation of the time allowed for the separate legal theories. *Travis v. Wash. Horse Breeders Ass'n*, 111 Wn.2d at 411. The burden of segregating is carried by the party requesting the fees. *Kastanis v. Educ. Emp. Credit Union*, 122 Wn.2d at 501, 859 P.2d 26 (1993); *Loeffelholz v. Citzens for Leaders With Ethics and Accountability Now*, 119 Wn. App. 665, 690, 82 P.3d 1199 (2004). We extend this duty to segregate between separate legal theories and claims to an obligation to segregate between those tasks for which attorney fees may be awarded and those tasks for which fees may not be awarded when imposing sanctions.

FMS argues that it should be granted essentially all fees and costs incurred because the bad faith of Robert Mitchell permeates the entire lawsuit. This argument conflicts with our earlier decision that the lawsuit was not frivolous.

FMS also argues that frivolous pleadings filed by and bad faith conduct of Robert Mitchell cannot be segregated from nonfrivolous pleadings and good faith conduct. It cites *Hume v. American Disposal Co.*, 124 Wn.2d 656, 880 P.2d 988 (1994) for the proposition that segregation is unnecessary if the claims are so related that no reasonable segregation of successful and unsuccessful claims can be made. We conclude that segregation is mainly possible. FMS attempted some segregation but often did not segregate between those tasks specifically responding to abusive litigation action and those tasks common to nonfriviolous litigation. FMS could and should have performed such a segregation. The mere fact that billing record entries are couched in general terms

and are not self-segregating does not excuse segregation. Declarations could and should have been submitted to the trial court identifying or reasonably estimating any amount of time within general entries for which attorney fees are recoverable.

We note that, in finding of fact 1, the trial court belittles plaintiff Rose's claim as one that "simply could not be established." CP at 664. The trial court's assessment of fees on remand was likely influenced by this finding. Whereas the finding is literally true, the finding is irrelevant. Regardless of whether a lawsuit cannot be established, sanctions are not warranted unless the suit is frivolous. To repeat, the fact that a party's action fails on the merits is by no means dispositive of the question of CR 11 sanctions. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d at 220 (1992); *Eller v. E. Sprague Motors & R.V.'s, Inc.*, 159 Wn. App. at 190 (2010). Finding of fact 1 conflicts with this court's ruling on the first appeal that the Roses' complaint was not frivolous and thus the finding transgresses the doctrine of the law of the case.

In finding of fact 2, the trial court notes that it struck as untimely Catherine and Gregory Rose's supplemental response to FMS' motion for sanctions, and four declarations of Robert Mitchell in support of Roses' supplemental response to the motion for sanctions. The trial court found these five pleadings to be filed in bad faith and designed to delay. The trial court further found that fees incurred in preparing nine pleadings filed by FMS in response to the Roses' five pleadings should be compensable. We affirm this ruling.

43

In findings of fact 4 and 30, the trial court awarded FMS all fees and costs reasonably incurred in bringing the motion for sanctions. FMS based, in part, its motion for sanctions on the argument that the lawsuit was frivolous, and thus FMS argued that substantially all of its fees and costs should be reimbursed by Robert Mitchell. This argument and the trial court's finding 4 conflict with our previous ruling that the lawsuit was not frivolous. Therefore, another ground must exist for FMS to recover its fees and costs for preparing discrete pleadings in support of its motion for sanctions. The only other ground stated in the findings of fact is plaintiff Roses' late filing of some of its pleadings opposing the motion for sanctions. Therefore, FMS should only be reimbursed those portions of pleadings filed in response to the Roses' supplemental pleadings, not the entire cost of the motion for sanctions.

On March 7, 9, 10, 15, 18, 21, 22, and 23, April 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 20, 21, 26, 27, 28, and 29, May 2, 3, 5, 20, 23, 24, and 25, June 8, and July 8, 14, and 15, 2011, Martens + Associates accounted for 58.2 hours of time in responding to Robert Mitchell's supplemental pleadings opposing sanctions after the hearing on the motion, addressing Kohl's records, responding to the Roses' demand for a deposition, responding to the Roses' motion to vacate the summary judgment order, responding to the Roses' motion for sanctions, preparing FMS' motion to end discovery, communicating with FMS, Robert Mitchell, and the superior court clerk regarding the motions, and reviewing communications from the trial judge with regard to the motions.

Pursuant to the trial court's finding that Mitchell filed those supplemental pleadings in bad faith, we affirm an award for this work. This award includes time spent on those pleadings listed by the trial court as being in response to Mitchell's bad faith conduct.

In finding of fact 5, the trial court impliedly finds that Robert Mitchell filed in bad faith the records he obtained from Kohl's because Mitchell did not follow CR 45(b)(2) when subpoenaing the records. Therefore, the trial court struck the Roses' supplemental response to the motion for sanctions and the first of Robert Mitchell's supplemental declaration to which he attached the records. The trial court already found the filing of those pleadings to be untimely and in bad faith. We have affirmed on other grounds the ruling that FMS should be paid the fees and costs incurred in responding to the supplemental pleadings.

Robert Mitchell contends that his failure to send FMS' counsel a copy of the subpoena on Kohl's was an honest omission. Mitchell also argues that subpoenaing the records could not be considered in bad faith because the Kohl's records helped his clients. These arguments fail to recognize that Mitchell sought the records only after the trial court granted FMS summary judgment, and the subpoenaing of the records caused delay and needless expense to FMS. The trial court was within its discretion when finding the conduct to be in bad faith.

In findings of fact 6 and 18, the trial court noted that Catherine and Gregory Rose relied on the documents obtained from Kohl's to support their April 11, 2011 motion for

an order to show cause why the order on summary judgment should not be set aside, motion for sanctions against FMS, and motion to compel deposition of FMS. In turn, FMS responded to these three motions. We affirm the trial court's ruling that the filing of these pleadings was in bad faith, and we agree that FMS should be compensated for attorney time expended in responding to the motions.

In finding of fact 7a, the trial court determined that Robert Mitchell attempted to seriously inconvenience FMS by scheduling a corporate deposition of the company in Spokane rather than its headquarters in Tulsa. The trial court impliedly found the scheduling of the deposition to be in bad faith. We defer to the trial court's finding. Robert Mitchell forwards no law that the Roses were entitled to conduct the deposition in Spokane. Numerous cases stand for the proposition that a corporate defendant should be deposed in its principal place of business unless it seeks affirmative relief. *Salter v. Upjohn Company*, 593 F.2d 649 (5th Cir. 1979); *Dan Euser Waterarchitecture, Inc. v. City of Miami Beach*, 112 So. 3d 683, 683 (Fla. Dist. Ct. App. 2013); *Ex parte Armstrong v. Ala. Power Co.*, 412 So. 2d 772, 773 (Ala. 1982). FMS filed a counterclaim, but the counterclaim was simply for an award of attorney fees and costs resulting from harassing litigation brought in bad faith. We find no case that addresses whether a counterclaim for a frivolous lawsuit constitutes a request for "affirmative relief" under the situs of deposition rule. Since the counterclaim asserts no new substantive claims into the suit,

we hold in the negative and affirm the trial court's award for the fees spent in responding to the corporate deposition notice.

On November 1, 2010, Martens + Associates accounted for 1.3 hours of time spent in legal research on the proper situs for a corporate deposition. On November 2, 2010, the law firm charged .8 hours for communicating with Robert Mitchell about the site for a deposition. On November 2, the law firm also billed .6 hours for preparing for a discovery conference with Robert Mitchell. Because the preparation was performed on the same day as discussing the site of the deposition and because correspondence in this window of time mentions the dispute about the location of the deposition, we give FMS the benefit of the doubt that the conference would discuss the site. Thus, we hold that FMS may recover for its attorneys' resulting from these tasks as related to Mitchell's bad faith insistence on a deposition of FMS in Washington State.

On November 9, 2010, Steven Stolle of the Martens + Associates firm prepared for and conducted a discovery conference with Robert Mitchell. Time allocated to these tasks was .9 hours. Because correspondence in this window of time mentions the dispute about the location of the deposition, we give FMS the benefit of the doubt that the conference discussed the site. This time should be reimbursed because of Robert Mitchell's bad faith insistence on a deposition of FMS in Washington State.

In finding of fact 7b, the trial court finds that the Roses' requests for admission sent to FMS were propounded for the purpose of harassing FMS and increasing the cost

47

of litigation. The Roses sent sixty eight requests that the trial court found repetitive. Many requests called for legal conclusions. A party is not required to admit legal conclusions under CR 36. *Santos v. Dean*, 96 Wn. App. 849, 861, 982 P.2d 632 (1999). We defer to the trial court's finding of fact 7b and award fees and costs FMS incurred in responding to the requests.

An August 11, 2010, Martens + Associates' billing entry of 2.3 hours mentions drafting and revising written discovery and preparing objections and answers to requests for admission. We do not know if this labor concerns only responses to the requests for admission. Since the trial court found most of the requests for admission to be harassing, we give FMS the benefit of the doubt and allow recovery for this task. We also allow recovery for this same task performed on August 12, 2010 for 3.5 hours and August 13 for .2 hours, despite the extraordinary amount of time spent on the task.

In finding of fact 7c, the trial court discusses the Roses' request for confidential and proprietary records of FMS. The trial court notes Robert Mitchell initially refused to sign a stipulated protective order prepared by FMS to shield the records from disclosure to other persons. Mitchell insisted on publicizing the records. Sixty days later Mitchell signed the protective order. According to the trial court, Robert Mitchell engaged in harassment and needlessly increased the cost of litigation during the sixty days preceding his signature. We defer to the trial court's finding of fact 7c and would award fees attributed to Mitchell's delay in approving the stipulation to the extent FMS can show

48

any fees. In appendix 2, we conclude that FMS shows no fees incurred because of any delay.

In finding of fact 8, the trial court finds that Robert Mitchell obstructed the proceeding by claiming that Gregory Rose and Catherine Rose could not be deposed on the same date. Later, Gregory Rose testified he is self-employed and had no set schedule. Therefore, Mitchell's demand that depositions be taken on different days was in bad faith and unfairly increased litigation costs. We agree that Mitchell should reimburse FMS for reasonable attorney fees and costs incurred for any second day of depositions. Nevertheless, FMS never scheduled or took the deposition of Catherine Rose. Therefore, we deny any fees for this bad faith.

In finding of fact 9, the trial court finds that Robert Mitchell prepared and signed the Roses' discovery responses and that many of the responses were deliberately deceptive. Mitchell falsely answered that the Roses did not retain any billings or letters from Kohl's or telephone bills. The deposition of Gregory Rose proved Mitchell's answers to be false. FMS sought the Kohl's records in its request for production 2 and the phone bills in request for production 6. To the extent that FMS could identify fees incurred because of these deceptive answers, FMS should be reimbursed the fees. We find no billing entry specifically devoted to these two requests for production nor does the record include other evidence from FMS identifying the fees incurred.

49

In finding of fact 10, the trial court finds that Robert Mitchell obstructed discovery in the Roses' answer to interrogatory 10. The interrogatory asked when the Roses first contacted Mitchell and Mitchell asserted the attorney client privilege in response. Nevertheless, the court noted that the date of contact is not privileged. The court further found that the improperly asserted privilege prevented FMS from learning the falseness to answers to interrogatories 17, 20, 23, and 25. To the extent that FMS could identify fees incurred because of the assertion of the attorney client privilege and these deceptive answers, FMS should be reimbursed the fees. We find no billing entry specifically devoted to these interrogatory answers nor does the record include other evidence from FMS identifying the fees incurred.

In finding of fact 11, the trial court finds that Robert Mitchell obstructed discovery in the Roses' answers to interrogatories 17, 20, 23, and 25, by providing false and misleading answers. The interrogatories sought information about the Roses' damages. The answers hid the fact that the Roses suffered no damages. To the extent that FMS could identify fees incurred because of the assertion of the attorney client privilege and these deceptive answers, FMS should be reimbursed the fees. We find no billing entry specifically devoted to these interrogatory answers nor does the record include other evidence from FMS identifying the fees incurred.

On November 4, 2010, Martens + Associates prepared a letter outlining the Roses' deficiencies in responding to discovery requests and reviewed Robert Mitchell's

responding letter. The time allotted to these tasks was 1.3 hours. We are uncertain of the specific alleged deficiencies in discovery responses, but will assume the letters mostly addressed the deficiencies found by the trial court to be in bad faith. We give FMS the benefit of the doubt and award it reimbursement for this time.

In finding of fact 14, the trial court mentioned that the joint declaration signed by Catherine and Gregory Rose in opposition to the summary judgment motion falsely averred that FMS called Catherine's phone number and called her at work after she told FMS not to call her work number. In finding of fact 15, the trial court finds that Robert Mitchell falsely asserted that FMS left "at least 19 more voicemail messages" for the Roses. CP at 673. The trial court accepted FMS' allocation of 1.4 hours of work spent in responding to these false statements. We affirm recovery for these hours.

In finding of fact 16, the trial court addressed Catherine and Gregory Rose's motion for reconsideration of the court's grant of FMS' summary judgment motion dismissing the lawsuit. In support of the motion for reconsideration, the Roses submitted a declaration from Catherine Rose averring that she found documents that Robert Mitchell earlier represented as being discarded. In support of the motion, Robert Mitchell also falsely claimed that FMS had refused to produce Kohl's records. The trial court impliedly found that Mitchell uttered these representations in bad faith. To the extent that FMS could establish tasks performed by its attorneys because of these representations, we agree with the trial court that Mitchell should reimburse the fees

incurred for the tasks. Along these lines, FMS should receive compensation for the time spent in responding to the motion for reconsideration. FMS agreed that it would not seek reimbursement for time spent by its attorneys with regard to a second scheduling of the motion.

On January 28 and 31, 2011, Martens + Associates spent 2.4 hours in contacting the superior court clerk regarding the Roses' motion for reconsideration, communicating with Robert Mitchell concerning the motion, reviewing the motion for reconsideration, and preparing an objection to the motion. We affirm an award for this time based on the trial court's implied finding that the motion for reconsideration was frivolous.

In finding of fact 17, the trial court mentioned that Robert Mitchell, during the hearing on the motion for sanctions, represented that the Roses believed they had discarded the records newly discovered during a move from house to house. Nevertheless, the Roses never moved during the relevant time. Thus, the trial court impliedly found Mitchell's representation to be false and in bad faith. To the extent that FMS could identify fees incurred because of the false representation, FMS should be reimbursed the fees. We find no billing entry that isolates any time spent responding to the false representation nor does the record include other evidence from FMS identifying the fees incurred.

In findings of fact 19 and 20, the trial court noted that the Robert Mitchell, in October 2011, filed an objection to the proposed order of sanctions. He argued that the

judgment should be entered against "Robert Mitchell, Attorney at Law, PLLC," and not him personally. Nevertheless, none of the pleadings filed by Mitchell contain the "PLLC" designation. The State of Washington dissolved the professional corporation in 2008. Therefore, the trial court found Mitchell's objection to the sanctions and implied representation of the existence of a corporation to be false and in bad faith. We agree. The trial court awarded FMS reimbursement of fees incurred in responding to this objection to the judgment. The trial court found that Robert Mitchell's bad faith led to all filings by FMS after February 15, 2011, the sanctions hearing date, and Robert Mitchell's first notice of appeal. We affirm this ruling in part and reverse in part. We agree that all time spent with regard to responding to Robert Mitchell's supplemental filings after February 15, 2011, with regard to the motion for sanctions, is compensable. Other entries between February 15, 2011 and the notice of appeal should be reviewed on their own merits.

On September 27, 2011, Leehwa Kim-McFadden, of Martens + Associates spent .4 hours researching the issue of a judgment against Robert Mitchell personally. On October 11, 13, 16, and 17, 2011, the law firm spent 9.6 hours in addressing and preparing pleadings to oppose Mitchell's attempt to limit any judgment to his defunct corporation. We affirm an award for these amounts. The work responded to Robert Mitchell's bad faith argument that a judgment could not be entered against him personally.

On October 31, 2011, Martens + Associates spent .8 hours researching the perfection of a judgment lien. On November 1, 2011, Martens + Associates conducted a .1 hour phone call to the court regarding an abstract of judgment. The entry of the judgment and the call regarding the abstract of judgment result from the bad faith litigation conduct of Robert Mitchell. Whereas, Mitchell has substantially reduced the amount of the judgment, a judgment would have been entered against him even if FMS had not sought an excessive amount for the judgment. The work performed on October 31 and November 1 would have been needed regardless of the amount of the judgment. Therefore, we award FMS reimbursement for these tasks.

In findings of fact 36 through 38, the trial court awarded FMS reasonable attorney fees and costs incurred in presenting its renewed motion for sanctions following remand from this reviewing court. We reverse this award. The renewed motion was necessitated by errors earlier committed by the trial court at the request of FMS, and as a result of Robert Mitchell prevailing in the first appeal. Mitchell should not pay for FMS' attorney's time spent in correcting those errors.

Our detailed analysis of the billings of Martens + Associates is contained in appendices 2 and 3. Appendix 2 lists those tasks, with their times, for which we award reimbursement to FMS against Robert Mitchell. Appendix 3 lists those tasks for which we deny recovery.

Lodestar Multiplier

54

Martens + Associates billed $168 per hour for most of its attorney's work. The trial court adjusted this hourly rate upward to $210 because of the high level of skill and experience of Martens + Associates lawyers. In other words, the trial court awarded a lodestar multiplier. We reverse this upward adjustment. We hold that no adjustments to the actual fees incurred by the party awarded sanctions is permissible. The award granted to FMS will be based solely on the fees incurred by FMS on those tasks for which we grant reimbursement. The amount of the award is $11,416.80.

The Washington Supreme Court first discussed the concept of adjusting upward or downward an attorney's hourly rate in *Bowers v. Transamerica Title Insurance Co.*, 100 Wn.2d 581, 593-601, 675 P.2d 193 (1983). According to the *Bowers* court, the trial court could adjust the reasonable hourly rate based on various factors, including the risk involved in a contingency case, and, in a very rare case, the quality of the work performed. The adjustment has been allowed in Washington when a plaintiff prevails on a statutory claim that includes a fee shifting provision. No Washington appellate court has permitted an adjustment above the hourly rate when sanctions of attorney fees and costs are granted.

CR 26(g)(3) permits sanctions for bad faith conduct in discovery so long as the award "include[s] an order to pay the amount of the reasonable expenses *incurred* because of the violation, including a reasonable attorney fee." (Emphasis added.) CR 56(g) allows sanctions for affidavits filed in bad faith and the sanctions may also include

55

"the amount of the reasonable expenses which the filing of the affidavits caused the other party to *incur*, including reasonable attorney fees." (Emphasis added.) CR 11 does not mention what sanctions may be imposed. Nevertheless, its statutory analog for frivolous lawsuits, RCW 4.84.185, references sanctions for "the reasonable expenses, including fees of attorneys, *incurred*" in the defense of the frivolous claim or action. (Emphasis added.) The plain language of the statute and the court rules strongly imply that an award of sanctions should be limited to the fees incurred by the party as a result of the sanctionable conduct.

The purpose of imposing sanctions for bad faith litigation conduct is to compensate the opposing party for costs incurred as a result of the conduct. *Highland Sch. Dist. No. 203 v. Racy*, 149 Wn. App. 307, 316, 202 P.3d 1024 (2009). An award of attorney fees beyond the amount actually incurred is not appropriate. *Highland Sch. Dist. No. 203*, 149 Wn. App. at 316. *Highland School District No. 203 v. Racy* involved only a claim for reasonable attorney fees and costs under RCW 4.84.185. Nevertheless, its reasoning applies to any award of sanctions for frivolous or bad faith pleadings and conduct.

### Fees and Costs on Appeal

FMS requests attorney fees on appeal under RAP 18.9(a) for a frivolous appeal, CR 11, CR 26(g), and CR 56(g). Since we substantially reduce the amount of fees awarded to FMS by the trial court, this appeal is not frivolous. Thus, we deny the request

for reasonable attorney fees.

In his reply brief, Robert Mitchell requests his costs incurred on appeal. Because he substantially prevails, we award Mitchell costs.

CONCLUSION

We remand to the trial court to enter a judgment in favor of FMS against Robert Mitchell personally in the sum of $11,416.80. Mitchell is entitled to an offset against the judgment for costs awarded him on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.

57

No. 32284-0-III
*Rose v. FMS, Inc.*


Appendix 1

Findings of Fact and Conclusions of Law Excerpted from the Trial Court's February 10, 2014 Ruling


1. The Court duly notes the Court of Appeals' Unpublished Opinion holding that the filing of plaintiffs' complaint was not frivolous and therefore the Court does not consider or award Defendant any fees or costs associated with answering plaintiffs' complaint. The Court also notes Division III's comment that this Court "does not explain what actions constituted 'bullying.'" Opinion at 11. As an introductory matter, it is useful to clarify that the term "bullying" was used in the sense of attempting to force another party to do something when there is no legitimate reason to expect it; perhaps a better term may have been "extortion," i.e., the attempt to obtain money to which one is not entitled, by claiming something that is untrue but which will take an inordinate toll - in this case, financially - to defend against. In the context of this case, the threat was made not only to cause Defendant to lose its licensure but also to expose Defendant's proprietary and confidential policies and to litigate the matter "in perpetuity, " thereby running up Defendant's expenses into the five figures - for a claim that (as the summary judgment demonstrated) simply could not be established. More important, as can be seen below, Mr. Mitchell used every tactic available to him to *obfuscate* the fact that his clients' claims could not be established, thereby following through with his threat to create untold expense to Defendant - simply because Defendant elected to defend and was thereby *forced* to incur those expenses because of the discovery abuse and other false representations of Mr. Mitchell, as more particularly described below.

2. With respect to items 10 through 22, above, this Court previously granted Defendant's motions to strike the filings by plaintiffs numbered 10, 11, 16, and 20 as untimely under CR 6 and LCR 6. Mr. Mitchell did not appeal that ruling. As indicated in the July 11, 2011, letter ruling, the Court had already found and still finds that plaintiffs' filings of items 10, 11, 16, and 20, above, were untimely, and thereby needlessly increased the costs of the litigation. The Court further finds that Mr. Mitchell's incessant filing of declaration after declaration was done in bad faith and was clearly designed to delay resolution of the motion for sanctions, as well as increase the costs of the litigation for the Defendant, which was obliged to incur fees and

58

costs in filing items 12, 13, 14, 15, 17, 18, 19, 21, and 22 in response to Mr. Mitchell's improper filings.

The numbered items listed by the court in finding of fact 2 and later findings are pleadings filed by FMS as earlier identified in the trial court's finding of fact. Those referenced in finding of fact 2 are:

> . . . .
> 12. Surreply of Defendant;
> 13. Supplemental Declaration of Steven A. Stolle in Support of the motion;
> 14. Supplemental Declaration of Kathryn L. Martin in Support of Defendant's motion for sanctions;
> 15. [Defendant's] Certificate of Service;
> . . . .
> 17. Second Surreply of Defendant on the motion for sanctions, and its Motion to Strike the two declarations in item 16 above;
> 18. Second Supplemental Declaration of Mr. Stolle regarding the motion for sanctions;
> 19. Declaration of Shelly Votaw;
> . . . .
> 21. FMS's Objection and Third Surreply in Response to item 20 above;
> 22. Second Declaration of Shelly Votaw;
> . . . .

CP at 661.

The findings of fact continued:

> 3. The Court previously granted Defendant's motion to strike item 25.e. above and Mr. Mitchell did not appeal that ruling.
> 4. Defendant is entitled to an award of its fees and costs reasonably incurred in bringing the motion for sanctions and in responding to plaintiffs' improper filings of items 10, 11, 16, and 20, above. As supported further below, this necessarily includes all fees and costs reasonably related to items 1 through 30, above.

5. In addition, with respect to items 10 and 11 above, this Court previously struck the portions of those pleadings purporting to explain items obtained by subpoena duces tecum directed to Kohl's based on the Court's findings, first, that the subpoena was issued in direct violation of CR 4S(b )(2), and, second, that the materials purportedly obtained pursuant to the improper subpoena were not accompanied by a declaration of records custodian properly authenticating them and thus they were and are inadmissible hearsay. With specific regard to CR 45(b)(2), Mr. Mitchell failed to serve Defendant with a copy of the subpoena five days before serving Kohl's and, in fact, never served Defendant with a copy of the subpoena. Mr. Mitchell did not appeal the ruling that he violated CR 45(b)(2) and striking those materials.

6. To the extent Defendant incurred fees and costs due to Mr. Mitchell's violation of CR 45(b)(2), in addition to those incurred in responding to the improperly filed materials identified in Finding of Fact Nos. 2 and 3, Defendant is entitled to an award of those fees and costs reasonably incurred because of the violation of CR 45(b)(2). This necessarily includes fees and costs incurred as a result of Mr. Mitchell's filing of other pleadings in reliance on materials obtained through his violation of CR 45(b)(2), including the filing on April 11, 2011, of a motion for order to show cause why the order on summary judgment should not be set aside, motion for sanctions against Defendant, and motion to compel deposition of Defendant, which were supported by his declaration attaching materials obtained through his improper subpoena to Kohl's. Each was filed after all of plaintiffs' claims were dismissed and Defendant had moved for voluntary dismissal of its counterclaim under the Civil Rules.

CR 26(g) Findings

7. Mr. Mitchell promulgated unreasonably burdensome and unnecessary discovery to Defendant in a bad faith effort to harass and bully Defendant into a settlement as the term "bully" is defined herein (see Finding of Fact No.1). In particular:

a. Mr. Mitchell served a CR 30(b)(6) deposition notice on Defendant . . . directing it to appear at his office in Spokane, Washington, for deposition when Defendant is a foreign corporation located in Tulsa, Oklahoma. Even after being provided authority by Defendant supporting a deposition in Tulsa, Mr. Mitchell continued to demand the deposition take place at his office. He finally relented only after Defendant again confirmed it would not appear in Spokane without a court order. In the context of the other findings entered herein, and the overall pattern of

60

misconduct within this case, the Court finds that Mr. Mitchell's insistence on the CR 30(b)(6) deposition of Defendant being located in his office in Spokane rather than in either Stevens County or in Tulsa, Oklahoma, was an attempt to seriously inconvenience the Defendant and thereby needlessly increase the cost of litigation.

b. Mr. Mitchell served 68 Requests for Admission on Defendant . . . that were unnecessarily burdensome and repetitious, such as Nos. 8 through 44, which, in effect asked "admit you called once, admit you called twice, admit you called three times" on up to asking Defendant to admit to more than thirty-five calls; later asking Defendant to admit to making "more than one hundred collection attempts in Washington State," then "more than two hundred" and so on in Nos. 52 through 62 ("more than two thousand"); the requests were otherwise improper in seeking admissions as to legal conclusions, including Nos. 1 through 7, 50 & 51, and 63 through 68. This leaves only Nos. 45 through 49 as arguably proper requests under CR 36. The Court concludes that Mr. Mitchell's signing and service of the requests for admissions was for the improper purpose of harassing Defendant and unnecessarily increasing the costs of the litigation.

c. Plaintiff served a First Set of interrogatories and a separate First Request for Production (RFP) of Documents on Defendant . . . which sought the identity and production of Defendant's internal policies and procedures, which Defendant considers confidential and proprietary. These requests include Interrogatory Nos. 6 through 19, and RFP Nos. 2, 9, and 11. On September 1, 2010, Defendant proposed a stipulated protective order to allow for production of the allegedly confidential and proprietary documents. By email on September 9, 2010, Mr. Mitchell unreasonably refused any accommodation, instead insisting he wanted to make the documents public and threatening a motion to compel. Mr. Mitchell never filed such a motion, but eventually, on November 1, 2010, signed and returned the same stipulated order proposed by Defendant on September 1st. During that sixty (60) day period, Mr. Mitchell repeatedly used demands for the documents at issue in an attempt to leverage a settlement from Defendant and in the interim filed a motion for summary judgment without the documents. Mr. Mitchell's actions in this regard cause the court to conclude, in light of the totality of his actions within the discovery arena, that he did not consider the documents necessary to his case and instead used the requests and demands for Defendant's allegedly confidential and/or proprietary documents for the improper purpose of

harassing and/or bullying Defendant into paying a settlement and needlessly increasing the cost of the litigation.

8. Mr. Mitchell engaged in a pattern of obstruction to prevent Defendant from obtaining pertinent discovery from plaintiffs and/or to drive up the cost of obtaining the discovery. This included refusing to produce his clients for deposition on the same or consecutive days with the intent to increase the fees and costs of Defendant in making two separate trips between Seattle and Spokane or to prevent at least one of the depositions from being taken at all. To avoid that extra expense, Defendant was obliged to take the deposition of only one of the plaintiffs, Gregory Rose, and was effectively denied the deposition of plaintiff Catherine Rose. At Gregory Rose's deposition, Mr. Rose indicated that he was self-employed and had no set schedule. . . . The Court therefore finds that the plaintiffs' depositions could have been scheduled for the same day or on consecutive days, and Mr. Mitchell's refusal to consent to that arrangement was made in bad faith and for the purpose of delay and to increase the cost of the litigation to Defendant. In the context of the violations as outlined above and below, this also constituted a bad faith attempt by Mr. Mitchell to avoid deposition of Mrs. Rose altogether.

9. An additional part of Mr. Mitchell's pattern of obstruction in discovery was in the answers he provided to Defendant's written discovery requests. Defendant served Mr. Mitchell with one set of interrogatories and requests for production (RFPs) and one set of requests for admission. Mr. Mitchell prepared and signed the responses for plaintiffs. The Court finds those responses demonstrate a pattern of deliberate deception and obfuscation. This includes answers and responses to Interrogatory No.6 and RFP No.2, which respectively sought information concerning, and copies of, plaintiffs' records of their Kohl's credit card account, including billing statements and correspondence. Mr. Mitchell responded in the answers and responses that plaintiffs did not retain copies of any responsive documents. This representation by Mr. Mitchell was false, as Mr. Rose later testified at deposition . . . that his wife maintained files concerning their Kohl's credit card bills. Similarly, in RFP No.6, Defendant sought copies of plaintiffs' telephone records. On behalf of plaintiffs, Mr. Mitchell responded that plaintiffs did not retain copies of their telephone bills. This assertion, too, was later refuted by Mr. Rose's deposition testimony, in which he stated that his wife maintained a file of their telephone records. . . . In sum, in response to Defendant's requests for discovery, plaintiffs produced zero documents, even though Mr. Rose testified that the requested

62

files existed. This was conclusively established by plaintiffs' submission of some of the responsive documents in support of plaintiffs' motion for reconsideration of the order on summary judgment. . . . Since Mr. Rose was willing to testify truthfully at deposition to the existence of the files at issue, this Court finds that Mr. Mitchell either knew or should have known the responsive documents existed when he signed and served the false answers to Defendant's discovery. Mr. Mitchell signed and served the false answers and responses, which were asserted in bad faith and to cause unnecessary delay and to needlessly increase the costs of the litigation. And Mr. Mitchell never produced the responsive documents.

10. Other answers to discovery signed by Mr. Mitchell were improper and intentionally misleading, if not outright false. In response to Defendant's Interrogatory No. 10, which sought the date that plaintiffs first contacted Mr. Mitchell, the answer provided was that the date was privileged. . . . Given that the date of a privileged communication must be provided in a privilege log, the date cannot, itself, be privileged. The Court finds that Mr. Mitchell, as a part of a broad pattern of discovery abuse, improperly asserted privilege in order to obstruct Defendant's reasonable discovery into when he was retained, and that this was for the improper purpose of preventing Defendant from learning of the falsity of his answers to other interrogatories, including Nos. 17, 20, 23, and 25, as discussed below.

11. Mr. Mitchell responded to other interrogatories from Defendant seeking information concerning plaintiffs' alleged damages by providing false and misleading answers. These included Interrogatory Nos. 17, 20, 23, and 25, all of which inquired into the nature and amount of plaintiffs' claimed damages. . . . Mr. Mitchell answered all of these interrogatories in essentially the same misleading manner, asserting generally that plaintiffs were damaged in having to take time away from other profitable endeavors to seek out and obtain an attorney to stop Defendant's telephone calls. These answers were false and made with knowledge of their falsity because Mr. Mitchell was already representing plaintiffs in another matter when Defendant began trying to contact them. This would have been readily apparent to Defendant if Mr. Mitchell had not improperly asserted privilege in response to Interrogatory No. 10 and had instead answered the interrogatory truthfully.

12. Mr. Mitchell's false and misleading answers to Defendant's interrogatories and requests for production and improper assertions of privilege as described in Findings of Fact Nos. 10 and 11 above, when

63

viewed in light of the totality of Mr. Mitchell's approach to discovery in the case, were interposed for the improper purpose of obstructing Defendant's reasonable discovery into plaintiffs' alleged damages and other relevant issues and to delay and drive up the costs of the litigation to Defendant.

13. Ultimately it became apparent that, even assuming liability, plaintiffs had no damages, but only after considerable expense was incurred by the Defendant in ferreting out the facts and being obstructed in its discovery efforts.

### CR 56(g) Findings

14. On the parties' cross-motions for summary judgment, Mr. Mitchell filed a joint declaration of plaintiffs, asserting that calls were made to Mr. Rose's cell phone and that Defendant called Mrs. Rose at work after she asked Defendant not to call her work number. Both assertions were false, as shown by the call log produced by Defendant . . . and the deposition testimony of Mr. Rose . . . admitting that his cell phone was never called by Defendant.

Defendant has allocated 1.4 hours to its response to the false statements in the joint declaration and other false statements on summary judgment detailed below, which the Court finds reasonable, but the Court also finds that the violation itself is part of a broader pattern of obfuscation and obstruction by Mr. Mitchell in this case which is properly sanctioned under this Court's inherent authority to control the litigation.

15. In plaintiffs' opposition to Defendant's motion for summary judgment, Mr. Mitchell asserted for the first time in the case, incorrectly, that Defendant had left "at least 19 more voicemail messages" for plaintiffs. This assertion of fact was false, as demonstrated by Defendant's call log in the record on summary judgment. The false assertion of fact violated CR 56(g) because Mr. Mitchell certainly knew or should have known, whether from the Roses or a correct reading of the call log, that no additional voice mail messages were actually left. Defendant spent a portion of its reply brief addressing Mr. Mitchell's false statement of fact. Defendant has allocated 1.4 hours as discussed in Finding of Fact No. 14 above which the Court finds reasonable.

16. On December 10, 2010, Mr. Mitchell filed a motion for reconsideration of this Court's order granting summary judgment to Defendant based upon alleged "newly discovered evidence." In support of that motion, he submitted a declaration from Mrs. Rose asserting that soon after the hearing on summary judgment she found many of the documents Mr. Mitchell previously represented to Defendant had been thrown out by

the plaintiffs. . . . Mr. Mitchell also submitted copies of plaintiffs' discovery requests to Defendant without Defendant's answers, asserting that plaintiffs had requested the Kohl's credit card agreement and billing statements from Defendant, but Defendant refused to produce them. . . . This was false and misleading because Defendant did not refuse to provide the responsive documents, but rather did not, and never did, have them. And, Mr. Mitchell knew that Defendant was, in fact, trying to obtain those documents from plaintiffs, on whose behalf Mr. Mitchell falsely represented the documents had been discarded "when they moved." . . . Mr. Mitchell also failed to serve Defendant with the motion for reconsideration.

17. Oral argument on the motion for sanctions was heard by the Court on February 15, 2011. At the hearing, Mr. Mitchell represented to the Court that plaintiffs believed plaintiffs had thrown out documents responsive to Defendant's discovery "when they moved." Yet plaintiffs never moved during the relevant time period, during the entirety of which Mr. Mitchell was their attorney and certainly knew they had not moved.

18. On April 11, 2011, Mr. Mitchell filed a Motion for Order to Show Cause re: Vacation of Judgment/Order, Motion for Sanctions against Defendant and its counsel, and a Motion to Compel Deposition of Defendant . . . . These motions substantially relied upon materials obtained by the improper subpoena to Kohl's, which this Court had already ruled violated CR 45(b)(2) and were also inadmissible hearsay. The next day, April 12, 2011, Mr. Mitchell filed a response . . . to Defendant's motion for an order terminating discovery, also relying upon the improperly obtained and inadmissible documents. The Court finds that these filings were filed in bad faith in that they relied on documents previously ruled inadmissible. The Court did not rule on Mr. Mitchell's motions because Mr. Mitchell eventually abandoned them, but Defendant incurred substantial fees and costs in responding to them.

19. On October 10, 2011, Mr. Mitchell filed objections to the proposed final order of sanctions submitted by Defendant, stating that sanctions should be awarded only against "Robert Mitchell, Attorney at Law, PLLC," and not against Mr. Mitchell personally, because "each and every pleading was filed by the firm" and "each and every pleading bears the firm name," and plaintiffs allegedly hired "Robert Mitchell, Attorney at Law, PLLC," and not Mr. Mitchell personally. Based on these representations, Mr. Mitchell then asked that "any enforcement orders should be limited to the firm, not the individual attorney." . . . The Court

finds, based on the fact the alleged firm name does not appear on any of Mr. Mitchell's filings and based on evidence subsequently submitted by Defendant on October 24, 2011, establishing that Mr. Mitchell's business entity was dissolved in 2008, that Mr. Mitchell's representations about the existence of the law firm of "Robert Mitchell, Attorney at Law, PLLC," were deliberately false and misleading in an attempt to convince this Court to limit Defendant's ability to enforce an award of monetary sanctions to a non-existent business entity, and not Mr. Mitchell, who operates his law practice as a sole proprietor.

20. . . . Defendant incurred expense in responding to the claims that he was a limited liability entity, thereby exposing the falsity of those claims which might otherwise have resulted in an unenforceable order, to Defendant's detriment.

21. To the extent not already addressed above, the Court finds that substantially all of the filings in this case from Mr. Mitchell's first supplementary filing after the sanctions hearing on February 15, 2011 . . . through the last filing entered prior to Mr. Mitchell's notice of appeal . . . which was Doc. Sub. No. 91, were either in furtherance of or caused in whole or in substantial part by Mr. Mitchell's pattern of violations of CR 26(g), and CR 56(g). These were also either in furtherance of or caused in whole or in substantial part by Mr. Mitchell's CR 11 violations completely unrelated to the issue of whether the complaint in this case was frivolous.

. . . .

23. Defendant's counsel billed 349.2 total hours in attorneys' fees on this case through May 31, 2012. Defendant has requested a compensatory award of sanctions based on 200.8 hours of total attorney time billed as a direct and proximate result of Mr. Mitchell's pattern of violations of CR 26(g) and CR 56(g). . . .

24. This Court previously ruled that Defendant's requested hourly rate of $250.00 for attorneys' fees, applying the lodestar multiplier of approximately 1.5 times the actual billing rate of $168.00 per hour to $250.00 per hour was appropriate and reasonable under the facts, circumstances, and pleadings in this case. This Court found that this was justified by defense counsel's articulate presentation of very complex issues in this case and their impeccably prepared pleadings throughout the proceedings, which are ample evidence of their high level of skill. However, implicit in those findings was the reality that this Court had adopted Defendant's position, later reversed on appeal, that the filing of the complaint had been frivolous. This Court also took into consideration that

Mr. Mitchell's rate, as a much less experienced attorney, is $200.00 per hour. Mr. Mitchell appealed this ruling, but the Court of Appeals let it stand.

a. It is once again to be noted that the $168 per hour rate was a discounted contract "insurance" rate and that Mr. Stolle's normal hourly rate was $350 per hour and Mr. Martens's $375 per hour, and that these normal hourly rates were reasonable and customary for attorneys of their experience and expertise in the Seattle area, especially on the complex issues involved in fair debt collection act cases.

b. However, given the reversal of this Court on the issue of the frivolous claim arguments, and given this Court's over-reliance on the quality of the pleadings involved, it seems that the lodestar multiplier should be adjusted, downward.

c. Mr. Mitchell's hourly rate was $200 - and he is a less experienced attorney and demonstrated less understanding of the Civil Rules both in the discovery arena and in the summary judgment arena, as evidenced by his violations in both areas. He makes no argument that his rate would have been unreasonable for an attorney of even average skill practicing in the fair debt collection litigation arena, nor that this rate would have been unreasonable to apply to defense counsel. Instead Mr. Mitchell challenges the ordering of sanctions at all and makes a generalized statement that the time spent was simply too much or that defense counsel should have exercised "billing discretion" and reduced its hours for its client. This Court, however, can find no fault with the approach taken by defense counsel in allocating its fees to the limited areas for which sanctions have been sought. Any time spent in review and consultation by Mr. Martens in addition to that of Mr. Stolle is reasonable given the complexity of the case and the seriousness of the consequences of the litigation, if plaintiffs had been successful.

d. Under all the circumstances of this case, this Court finds that the lodestar increase from the $168 discounted rate billed to Defendant by its counsel should be to $210 per hour -- $10 per hour more than Mr. Mitchell charges, in partial recognition of defense counsel's superior experience level --

. . . .

25. Defense counsel reasonably, necessarily and actually expended a total of 21.9 hours in attorneys' fees as a direct and consequential result of Mr. Mitchell's violations of CR 26(g) in the discovery he served on Defendant, including interrogatories, requests for production, requests for

admission and the CR 30(b)(6) notice . . . for a total of $4,599.00 in attorney fees based on the rate of $210.00 per hour times 21.9 hours for those violations.

26. Defense counsel reasonably, necessarily and actually expended a total of 10.5 hours in paralegal fees as a direct and consequential result of Mr. Mitchell's violations of CR 26(g) in the discovery he served on Defendant, including interrogatories, requests for production, requests for admission, and the CR 30(b)(6) notice . . . for a total of $714.00 based on the rate of $68.00 per hour times 10.5 hours.

27. Defense counsel reasonably, necessarily and actually expended 21.0 hours in attorneys' time as a direct and consequential result of Mr. Mitchell's violations of Civil Rule 26(g) in answering Defendant's discovery requests, including interrogatories, requests for production, and requests to depose plaintiffs . . . for a total of $4,410.00.

. . . .

29. Defense counsel reasonably, necessarily and actually expended $827.34 in out-of-pocket costs and expenses as a direct and consequential result of Mr. Mitchell's violations of CR 26(g) in answering Defendant's discovery requests, including interrogatories, requests for production, and request to depose plaintiffs. . . .

30. Defense counsel reasonably, necessarily and actually expended a total of 156.5 hours in attorneys' time on the motion for sanctions, including responding to Mr. Mitchell's numerous supplemental filing after the hearing, and his violations of CR 45(b )(2) which were included in many of his filings. . . . This totals $32,865.00, representing the hourly rate of $210 times 156.6 hours.

. . . .

32. Defense counsel reasonably, necessarily and actually expended a total of $1,575.83 in out-of-pocket costs and expenses related to the motion for sanctions, including responding to Mr. Mitchell's numerous supplemental filings and motions after the hearing. . . .

33. While the bulk of Mr. Mitchell's improper filings and false statements are subsumed in the discovery violations and motion for sanctions, defense counsel separately, reasonably, necessarily and actually expended at least 1.4 hours of additional attorneys' time dealing with Mr. Mitchell's motion for reconsideration of the Court's order on summary judgment . . ., for a total of $294.00 representing 1.4 hours times the hourly rate of $210. It is to be noted that defense counsel does not seek any sanctions related to Mr. Mitchell's *renote* of the motion for reconsideration,

since he had stipulated that he would not do so if the *renoted* hearing was stricken, and it was. Thus no time has been included with respect to the *renote* of the motion for reconsideration.

. . . .

36. Defense counsel has reasonably estimated from unbilled time entries that an additional 58 attorney hours were incurred in preparing Defendant's motion for the present amended order, including time preparing the fee and cost allocation, motion, proposed order with findings of fact and conclusions of law, and supporting declaration of Mr. Stolle with exhibits thereto. The Court finds this attorney time reasonable and that it has been reasonably incurred at a reasonable hourly rate of $210.00 per hour for a total of $12,180.00.

Appendix 2

Compensable Billing Entries

| Date | Professional Service | Hours | Amount |
|---|---|---|---|
| 08/11/2010 | Review plaintiffs' first request for admission and draft objections and answers thereto; Review documents received from client. | 2.30 | 156.40 |
| 08/12/2010 | Review and revise answers to plaintiffs' first requests for admission. | 0.40 | 27.20 |
| 08/12/2010 | Review and revise FMS's objections and answers to plaintiffs' first requests for admission. | 0.40 | 27.20 |
| 08/12/2010 | Prepare FMS's answers to plaintiffs' first requests for admission. | 2.70 | 453.60 |
| 08/13/2010 | Review letter from Robert Mitchell re discovery due date confirmation. | 0.20 | 13.60 |
| 11/01/2010 | Research authorities for holding CR 30(b)(6) deposition of corporate defendant at principle place of business for letter to plaintiffs' counsel. | 1.30 | 218.40 |
| 11/02/2010 | Review and revise correspondence to plaintiffs' counsel regarding plaintiffs' CR 30(b)(6) deposition of FMS. | 0.20 | 13.60 |
| 11/02/2010 | Prepare letter to plaintiffs' counsel R. Mitchell regarding location of corporate defendant's deposition. | 0.40 | 67.20 |
| 11/02/2010 | Plan and prepare for CR 26i conference with plaintiffs' counsel R. Mitchell. | 0.60 | 100.80 |
| 11/02/2010 | Review e-mail from plaintiffs' counsel R. Mitchell regarding deposition of FMS and cancellation of CR 26(i) conference; forward to client. | 0.20 | 33.60 |
| 11/04/2010 | Prepare four page letter to plaintiffs' counsel detailing deficiencies in plaintiffs' answers and responses and requesting CR 26(i) conference. | 1.20 | 201.60 |

| 11/04/2010 | Review e-mail from plaintiffs' counsel R. Mitchell regarding CR 26(i) conference concerning plaintiffs' answers to FMS's discovery requests. | 0.10 | 16.80 |
|---|---|---|---|
| 11/09/2010 | Prepare for and conduct CR 26(i) conference with plaintiffs' counsel R. Mitchell. | 0.70 | 117.60 |
| 11/09/2010 | Prepare e-mail to plaintiffs' counsel R. Mitchell confirming agreements reached during CR 26(i) conference. | 0.20 | 33.60 |
| 11/20/2010 | Receive, review, modify and revise FMS, Inc.'s reply on its cross motion for summary judgment. | 1.40 | 235.20 |
| 01/28/2011 | Send/Receive e-mail transmission to Stevens County Clerk regarding plaintiffs' motion for reconsideration of court's order dismissing plaintiffs' claims. | 0.10 | 6.80 |
| 01/28/2011 | Prepare e-mail to K. Martin re plaintiffs' filing of unserved motion for reconsideration; review response. | 0.20 | 33.60 |
| 01/31/2011 | Receive and review note for hearing on motion for reconsideration. | 0.10 | 16.80 |
| 01/31/2011 | Telephone conference (x3) with court regarding plaintiffs' motion for reconsideration. | 0.30 | 20.40 |
| 01/31/2011 | Send/Receive e-mail transmission (multiple) from/to court regarding plaintiffs' unserved motion for reconsideration documents and Receive, review and analyze reconsideration motion documents. | 0.50 | 34.00 |
| 01/31/2011 | Receive and review plaintiffs' re-note on motion for reconsideration, prepare objections to plaintiffs' untimely motion for reconsideration and discussions with attorneys. | 1.10 | 74.80 |
| 01/31/2011 | Prepare and Send Facsimile Transmission to plaintiffs' counsel regarding improperly | 0.10 | 6.80 |

| | | | |
|---|---|---|---|
| | noted motion for reconsideration. | | |
| 03/07/2011 | Receive, review and analyze plaintiffs' supplemental response to motion for sanctions. | 0.40 | 67.20 |
| 03/07/2011 | Receive, review and analyze plaintiffs' supplemental response to motion for sanctions. | 0.30 | 20.40 |
| 03/07/2011 | Review and analyze plaintiffs' supplemental brief in opposition to motion for sanctions and supporting declaration of R. Mitchell with exhibits thereto. | 0.90 | 151.20 |
| 03/07/2011 | Prepare e-mail to K. Martin regarding and attaching plaintiffs' supplemental submission on FMS's motion for sanctions. | 0.20 | 33.60 |
| 03/07/2011 | Telephone call to K. Martin regarding response to plaintiffs' supplemental submission in opposition to motion for sanctions; leave voice message. | 0.10 | 16.80 |
| 03/07/2011 | Telephone call from K. Martin regarding plaintiffs' supplemental submission in opposition to motion for sanctions and FMS response. | 0.20 | 33.60 |
| 03/07/2011 | Prepare supplemental declaration of S. Stolle and exhibits thereto in response to plaintiffs' supplemental submission in opposition to FMS's motion for sanctions. | 1.20 | 201.60 |
| 03/07/2011 | Receive, review and analyze plaintiffs' supplemental response to FMS' motion for sanction with Mitchell declaration thereto. | 0.20 | 13.60 |
| 03/09/2011 | Exchange e-mails with K. Martin regarding contact with Kohl's in response to plaintiffs' supplemental submission on motion for sanctions. | 0.10 | 16.80 |
| 03/10/2011 | Receive, review, modify and revise FMS' surreply in support of its motion for sanctions. | 0.50 | 84.00 |
| 03/10/2011 | Assist counsel with draft surreply on motion for sanctions against plaintiffs' | 0.20 | 13.60 |

| | counsel. | | |
|---|---|---|---|
| 03/10/2011 | Prepare supplemental declaration of Martin in support of motion for sanctions. | 0.20 | 13.60 |
| 03/10/2011 | Review and revise surreply in support of FMS's motion for sanctions. | 0.30 | 20.40 |
| 03/10/2011 | Prepare GR 17 declaration regarding Martin's e-mailed declaration, prepare certificate of service and correspondence to court. | 0.70 | 47.60 |
| 03/10/2011 | Send/Receive e-mail transmission to local messenger company regarding service of FMS's surreply on motion for sanctions papers. | 0.10 | 6.80 |
| 03/10/2011 | Prepare FMS surreply on motion for sanctions. | 2.90 | 487.20 |
| 03/18/2011 | Review e-mail communications from plaintiffs' counsel regarding Kohl's records and review e-mail communications between Kohl's and plaintiffs' counsel and documents produced by Kohl's. | 0.20 | 13.60 |
| 03/18/2011 | Review e-mail from plaintiffs' counsel R. Mitchell with e-mail string between Mitchell and Kohl's representative, and attached Kohl's documents. | 0.50 | 84.00 |
| 03/18/2011 | Prepare e-mail to K. Martin, forwarding e-mail and attachments from plaintiffs' counsel R. Mitchell and requesting client deposition. | 0.10 | 16.80 |
| 03/18/2011 | Telephone call from K. Martin regarding Mitchell e-mail and response. | 0.20 | 33.60 |
| 03/21/2011 | Receive, review and analyze subpoena duces tecum to Kohls, and supplemental declarations from plaintiffs' counsel regarding sanctions. | 0.60 | 100.80 |
| 03/21/2011 | Review/analyze - Receive, review and analyze plaintiffs' supplemental declarations regarding FMS's motion for sanctions. | 0.20 | 13.60 |

| 03/21/2011 | Review and analyze two supplemental "declarations" of plaintiffs' counsel R. Mitchell with exhibits regarding FMS's pending motion for sanctions. | 0.80 | 134.40 |
|---|---|---|---|
| 03/21/2011 | Prepare e-mail forwarding latest Mitchell filing to K. Martin; review response. | 0.20 | 33.60 |
| 03/21/2011 | Telephone to K. Martin regarding response to Mitchell filing. | 0.20 | 33.60 |
| 03/21/2011 | Prepare FMS's second surreply and second supplemental declaration of S. Stolle with exhibits in support of FMS's motion for sanctions. | 0.90 | 151.20 |
| 03/21/2011 | Receive, review and analyze Mitchell's 2nd and 3rd supplemental declarations in response to motions sanctions. | 0.40 | 27.20 |
| 03/22/2011 | Review, revise and finalize second surreply on motion for sanctions papers and prepare certificate of service; Prepare motion for voluntary dismissal of counterclaim, proposed order and certificate of service and prepare correspondence to court regarding all. | 2.20 | 149.60 |
| 03/22/2011 | Exchange series of telephone calls and e-mails with K. Martin regarding FMS response to latest Mitchell supplemental filing on FMS's motion for sanctions. | 0.40 | 67.20 |
| 03/22/2011 | Prepare FMS's 2d surreply on its motion for sanctions. | 0.70 | 117.60 |
| 03/23/2011 | Prepare declaration of K. Engle at Kohl's in support of second motion for sanctions and revise correspondence to court and certificate of service; Prepare GR 17 declaration regarding Engle declaration. | 0.70 | 47.60 |
| 03/23/2011 | Review e-mail from K. Martin, including e-mail string between FMS personnel and Kohl's regarding plaintiffs' subpoena and attached documents provided by Kohl's evidencing communications with R. | 0.60 | 100.80 |

| | Mitchell. | | |
|---|---|---|---|
| 03/23/2011 | Telephone call to K. Engle at Kohl's regarding possible declaration. | 0.10 | 16.80 |
| 03/23/2011 | Telephone call from J. Mikhail of Kohl's regarding declaration. | 0.20 | 33.60 |
| 03/23/2011 | Revise declaration and transmit to J. Mikhail. | 0.20 | 33.60 |
| 04/04/2011 | Receive and review e-mail from Robert Mitchell | 0.10 | 16.80 |
| 04/04/2011 | Review email from K. Martin re status of sanctions motion. | 0.10 | 16.80 |
| 04/04/2011 | Review and analyze lengthy email from plaintiffs' counsel R. Mitchell and forwarded emails between Mitchell and J. Dickerson of Kohl's, and attached letter dated March 23, 2011, from Dickerson to Mitchell regarding plaintiffs' Kohl's account. | 0.40 | 67.20 |
| 04/04/2011 | Prepare email to K. Martin regarding response to plaintiffs' counsel's email and attaching three Dickerson letters. | 0.30 | 50.40 |
| 04/05/2011 | Review responsive email from K. Martin regarding response to email from plaintiffs' counsel threatening sanctions. | 0.10 | 16.80 |
| 04/06/2011 | Review email from K. Martin regarding Dickerson letters. | 0.10 | 16.80 |
| 04/06/2011 | Prepare draft of Second Declaration of Shelly Votaw. | 0.50 | 84.00 |
| 04/06/2011 | Prepare email to K. Martin attaching draft of Second Declaration of S. Votaw. | 0.20 | 33.60 |
| 04/07/2011 | Review and revise second declaration of Votaw in support of motion. | 0.20 | 13.60 |
| 04/07/2011 | Review voice message from K. Martin regarding information from Kohl's. | 0.10 | 16.80 |
| 04/07/2011 | Telephone call to K. Martin regarding possible declaration from Kohl's. | 0.20 | 33.60 |
| 04/07/2011 | Prepare second declaration of S. Votaw; transmit to K. Martin. | 0.60 | 100.80 |

| 04/07/2011 | Review email from K. Martin to T. White regarding Votaw declaration. | 0.10 | 16.80 |
|---|---|---|---|
| 04/07/2011 | Review email from T. White to S. Votaw forwarding draft declaration. | 0.10 | 16.80 |
| 04/07/2011 | Conference call with K. Martin and T. White. | 0.30 | 50.40 |
| 04/08/2011 | Review and revise correspondence to plaintiffs' counsel regarding motion for sanctions and prepare facsimile correspondence to plaintiffs' counsel concerning same. | 0.20 | 13.60 |
| 04/08/2011 | Attend and participate in telephonic conference with K. Martin, T. White, and S. Votaw regarding Kohl's administration of card holder agreements. | 0.50 | 84.00 |
| 04/08/2011 | Revise Second Votaw declaration and exchange several emails with S. Votaw regarding additional revisions and finalization, review email from Votaw with attached signed final Second Declaration. | 0.80 | 134.40 |
| 04/08/2011 | Prepare letter to plaintiffs' counsel R. Mitchell regarding declaration from Kohl's and attach draft to email to K. Martin. | 0.40 | 67.20 |
| 04/08/2011 | Review email from plaintiffs' counsel R. Mitchell and attached motions for sanctions against FMS and for order to show cause to set aside order on summary judgment, with supporting declarations by Mitchell for each. | 0.70 | 117.60 |
| 04/08/2011 | Prepare email to K. Martin, forwarding email from R. Mitchell with attached motions and supporting papers. | 0.30 | 50.40 |
| 04/08/2011 | Review and analyze second email from plaintiffs' counsel R. Mitchell and attached motion to compel deposition of FMS with supporting declaration of R. Mitchell. | 0.70 | 117.60 |
| 04/09/2011 | Forward Mitchell email of previous evening to K. Martin; review response. | 0.20 | 33.60 |

| 04/10/2011 | Receive, review and analyze plaintiffs' motion for sanctions and order to show cause papers. | 0.50 | 34.00 |
|---|---|---|---|
| 04/11/2011 | Receive, review and analyze motion for an order to show cause, the supplemental declaration of Robert Mitchell, plaintiffs' motion and memorandum for sanctions. | 1.10 | 184.80 |
| 04/11/2011 | Review email communications with plaintiffs' counsel regarding motion for sanctions. | 0.10 | 6.80 |
| 04/11/2011 | Review plaintiffs motion for sanctions, motion to compel deposition of FMS, and motion for order to show cause re order on summary judgment, with multiple declarations of plaintiffs' counsel R. Mitchell, previously received unsigned via email from R. Mitchell. | 0.90 | 151.20 |
| 04/11/2011 | Review and respond to three emails from plaintiffs' counsel R. Mitchell, one of which is very lengthy. | 0.50 | 84.00 |
| 04/11/2011 | Receive & review Plaintiff's Motion for Sanctions and supporting declarations. | 0.30 | 20.40 |
| 04/12/2011 | Prepare FMS's third surreply on its motion for sanctions against plaintiffs' counsel R. Mitchell. | 2.20 | 369.60 |
| 04/13/2011 | Receive, review and analyze plaintiffs' response to motion to cut off discovery. | 0.40 | 67.20 |
| 04/13/2011 | Review and analyze plaintiffs' motion to compel depositions of FMS and K. Martin, and supporting declaration of R. Mitchell with exhibits thereto. | 1.30 | 218.40 |
| 04/13/2011 | Prepare email to K. Martin attaching plaintiffs' motion to compel FMS's deposition and discussing response. | 0.20 | 33.60 |
| 04/13/2011 | Review responsive email from K. Martin regarding plaintiffs' motion to compel. | 0.10 | 16.80 |
| 04/13/2011 | Receive & review plaintiffs' Response to Defendant's Motion to Cut Off Discovery | 0.30 | 20.40 |

| | | | |
|---|---|---|---|
| | & plaintiffs' Motion to Compel CR 30(b)(6) Deposition. | | |
| 04/14/2011 | Prepare FMS response to plaintiffs' motion for sanctions and motion to compel depositions. | 3.70 | 621.60 |
| 04/15/2011 | Review and revise objections and response to plaintiffs' third supplemental declaration and motion for sanctions and assist attorney with citations therein. | 0.60 | 40.80 |
| 04/15/2011 | Review, revise and finalize objection to plaintiffs' third supplemental declaration and third supplemental surreply on FMS's motion for sanctions papers; Prepare certificate of service and correspondence to court and file/serve same. | 1.70 | 115.60 |
| 04/15/2011 | Prepare FMS's third surreply to third supplemental submission of plaintiffs' in opposition to FMS's motion for sanctions, and supporting declaration of S. Stolle with exhibits thereto. | 3.70 | 621.60 |
| 04/17/2011 | Send/Receive e-mail transmission to messenger in Spokane regarding service of FMS's objection and third supplemental surreply on motion for sanction papers. | 0.10 | 6.80 |
| 04/20/2011 | Review court's docket entries regarding order of dismissal. | 0.10 | 6.80 |
| 04/21/2011 | Telephone conference with court's administrative clerks regarding pending motions. | 0.20 | 13.60 |
| 04/21/2011 | Prepare and exchange three sets of emails with K. Martin regarding documents evidencing DOL closure of investigation of FMS. | 0.30 | 50.40 |
| 04/21/2011 | Review and analyze pleadings, correspondence, and discovery received recently. | 0.50 | 34.00 |
| 04/27/2011 | Review email from plaintiffs' counsel R. Mitchell attaching unsigned copy of notice | 0.30 | 50.40 |

| | striking the hearing on plaintiffs' motion for sanctions and motion to compel FMS's deposition; forward to K. Martin. | | |
|---|---|---|---|
| 04/28/2011 | Receive and review correspondence from plaintiffs' counsel to Kohl's and Telephone conference with court's administrator regarding pending motions. | 0.40 | 27.20 |
| 04/28/2011 | Review email from K. Martin and attached letter from plaintiffs' counsel R. Mitchell to S. Votaw at Kohl's. | 0.30 | 50.40 |
| 04/28/2011 | Prepare email to K. Martin regarding handling of Mitchell letter to Votaw. | 0.20 | 33.60 |
| 04/28/2011 | Review responsive email from K. Martin regarding Mitchell letter to S. Votaw. | 0.10 | 16.80 |
| 04/28/2011 | Return call from Kohl's internal counsel A. Catalano regarding Mitchell letter to S. Votaw, Kohl's response, and possible third declaration from S. Votaw. | 0.50 | 84.00 |
| 04/28/2011 | Prepare draft third declaration of S. Votaw and transmit via email to Kohl's internal counsel A. Catalano. | 1.10 | 184.80 |
| 04/29/2011 | Review email acknowledgement from A. Catalano re receipt of draft Votaw declaration. | 0.10 | 16.80 |
| 05/02/2011 | Receive and review notice striking hearing from plaintiff's counsel. | 0.10 | 16.80 |
| 05/02/2011 | Review hard copy of previously emailed copy of plaintiffs' notice striking hearing. | 0.10 | 16.80 |
| 05/03/2011 | Exchange series of six emails with Kohl's internal counsel A. Catalano to schedule conference call including S. Votaw regarding draft declaration. | 0.50 | 84.00 |
| 05/05/2011 | Review Votaw's third declaration. | 0.10 | 6.80 |
| 05/05/2011 | Review email from M. Votaw with attached executed declaration; forward to K. Martin. | 0.10 | 16.80 |
| 05/20/2011 | Produced requested documentation for Amy McCann from Chartis. | 0.20 | 13.60 |
| 05/20/2011 | Produced requested documentation for Amy | 1.10 | 74.80 |

| | | | |
|---|---|---|---|
| | McCann from Chartis. | | |
| 05/23/2011 | Receive, review and analyze judge's correspondence and Telephone conference with court regarding pending motions. | 0.20 | 13.60 |
| 05/23/2011 | Review and analyze letter from the court regarding procedural posture of the case and requesting a response from counsel. | 0.30 | 50.40 |
| 05/23/2011 | Prepare email to plaintiff's counsel R. Mitchell, attaching court's letter regarding remaining issues and third declaration of S. Votaw, and requesting response for reply to court. | 0.30 | 50.40 |
| 05/23/2011 | Produced requested documentation for Amy McCann from Chartis. | 0.80 | 54.40 |
| 05/24/2011 | Review and analyze responsive email from plaintiff's counsel regarding response to court's letter. | 0.20 | 33.60 |
| 05/24/2011 | Exchange six emails with plaintiff's counsel R. Mitchell in attempt to reach agreement on response to court's inquiry regarding matters remaining at issue. | 0.70 | 117.60 |
| 05/25/2011 | Review email communications with plaintiffs' counsel regarding pending motions. | 0.10 | 6.80 |
| 05/25/2011 | Review email from K. Martin; respond. | 0.20 | 33.60 |
| 05/25/2011 | Prepare parties' joint response to letter from the court on remaining issues; transmit to plaintiff's counsel R. Mitchell for approval; review response and sign final. | 0.60 | 100.80 |
| 06/08/2011 | Draft and send letter to Judge Baker re Judge's copies. | 0.50 | 34.00 |
| 07/08/2011 | Review & analyze motion for sanctions responses. | 0.40 | 27.20 |
| 07/14/2011 | Receive, review and analyze the Court's letter ruling on FMS' motion for sanctions. | 0.40 | 67.20 |
| 07/14/2011 | Receive, review, modify and revise status report to client and carrier regarding the Court's ruling on FMS' motion for | 0.30 | 50.40 |

| | | | |
|---|---|---|---|
| | sanctions. | | |
| 07/14/2011 | Receive and review correspondence from Judge Rebecca Barker on motion for sanctions. | 0.30 | 50.40 |
| 07/14/2011 | Research on cases filed by plaintiffs' counsel related to submission of the fees and costs pursuant to the court's ruling on motion for sanctions. | 0.70 | 47.60 |
| 07/14/2011 | Receive, review and analyze court's letter ruling on FMS's motion for sanctions. | 0.30 | 20.40 |
| 07/14/2011 | Review and analyze four page letter order from the court granting FMS's motion for sanctions. | 0.60 | 100.80 |
| 07/14/2011 | Review letter from Judge Rebecca Baker re ruling. | 0.80 | 54.40 |
| 07/15/2011 | Receive and review e-mail from Robert W. Mitchell. | 0.10 | 16.80 |
| 07/15/2011 | Receive and review e-mail to Robert W. Mitchell. | 0.10 | 16.80 |
| 09/27/2011 | Research on proposed judgment against plaintiffs' counsel, individually. | 0.40 | 27.20 |
| 10/11/2011 | Assist counsel with draft response to plaintiffs' objections to order on sanctions award; contact Secretary of State Corporations Division regarding allegations raised by plaintiffs' counsel in response; make notes regarding same. | 0.40 | 27.20 |
| 10/11/2011 | Prepare FMS's response to R. Mitchell's "objections" to proposed form of order on sanctions. | 5.20 | 873.60 |
| 10/13/2011 | Receive, review, modify and revise FMS's court ordered reply to Mitchell's objections to presentation of order on fees and expenses. | 1.40 | 235.20 |
| 10/13/2011 | Status Report to Client/Carrier re: Court ordered reply on presentation of sanctions order. | 0.60 | 100.80 |
| 10/13/2011 | Review and revise response to plaintiffs' | 0.80 | 54.40 |

| | | | |
|---|---|---|---|
| | counsel regarding order awarding fees and costs; draft Certificate of Service for same; have same filed with clerk and served on trial court; serve plaintiffs' counsel with same. | | |
| 10/13/2011 | Revise and finalize proposed order for presentment of judgment against R. Mitchell. | 0.80 | 134.40 |
| 10/16/2011 | Review and analyze plaintiffs' objections to proposed order on fees and costs award. | 0.30 | 20.40 |
| 10/17/2011 | Review FMS's response to Mitchell's objections to order on the fees and costs award. | 0.10 | 6.80 |
| 10/31/2011 | Research on judgment lien and procedures for perfecting judgment lien. | 0.80 | 54.40 |
| 11/01/2011 | Telephone conference with court regarding abstract of judgment. | 0.10 | 6.80 |

CP 105, 106, 107, 113, 114, 115, 116, 119, 122, 123, 127-31, 135-42, 144-45, 150, 152-54.

Appendix 3

We now list those billing entries of Martens + Associates that we hold are not compensable.

FMS seeks reimbursement of time spent by Martens + Associates on July 9, 2010 and July 12, 2010 for the law firm's communications with FMS, the law firm's communication with opposing counsel, a conflicts check, preparing a notice of appearance, reviewing date of service, and preparing correspondence with the court. This court previously ruled that the lawsuit was not frivolous. All of the tasks performed on July 9 and 12 are standard tasks performed when responding to a lawsuit. Since the lawsuit was not frivolous, standard tasks in responding to the lawsuit cannot be the result of frivolous conduct of opposing counsel.

On August 6, 9, and 11, and September 2 and 3, 2010, FMS' lawyers prepared some unidentified pleadings, prepared an answer and counterclaim, telephoned the court clerk, telephoned the secretary of state and FMS' registered agent, and communicated with FMS. These tasks are standard tasks performed when responding to a lawsuit. Since the lawsuit was not frivolous, standard tasks in responding to the lawsuit cannot be the result of frivolous conduct of opposing counsel.

The law firm Martens + Associates assessed time on August 3, 5, 6, 7, 8, 12, 16, 17, and 23, and September 1, 2010 for written discovery and communications with

83

Robert Mitchell and FMS regarding discovery. Most entries do not identify the discovery requests upon which the firm labored. Entries for August 7, 12, 16, 17 reference requests for admission, interrogatories, requests for production, and the notice for a corporate deposition. FMS would be entitled to reimbursement for time spent regarding the notice for the corporate deposition, most of the requests for admission, and the requests for production seeking proprietary information, if Martens + Associates had segregated the time spent on responding to those discovery requests. Since the law firm did not segregate, we disallow recovery for the work performed on these dates.

On August 5, 9, and 11, September 3, 9, and 28, and November 3, 4, 9, and 10, 2010, Martens + Associates conducted fact investigation and reviewed the Roses' complaint. These chores are standard chores performed when responding to a lawsuit. Since the lawsuit was not frivolous, standard tasks in responding to the lawsuit cannot be the result of frivolous conduct of opposing counsel.

On August 9, 11, 12, 17, and 26, September 1, 9, and 28, and November 17, 2010, Martens + Associates engaged in document production. This task is a standard chore when responding to a lawsuit. Since the lawsuit was not frivolous, standard tasks in responding to the lawsuit cannot be the result of frivolous conduct of opposing counsel.

On August 10, 11, 13, 20, and 25, and October 26, 2010, FMS' law firm prepared discovery motions, worked on discovery, and communicated with Robert Mitchell about discovery. On August 10, Steven Stolle engaged in a discovery conference with

84

Mitchell. Our review of correspondence leading to the discovery conference reveals that the conference focused on whether FMS was properly served with discovery requests and when FMS would respond to the requests. The conference did not entail discussion of the discovery requests that the trial court found to be harassing. Thus, we deny recovery for this work.

On November 10, 2010, FMS supplemented its discovery responses. Since this is a standard task of responding to a lawsuit, we deny recovery for this work.

On August 25, October 25, November 10, and December 6, 2010, Martens + Associates engaged in analysis, strategy and communications with FMS. These tasks are standard tasks performed when responding to a lawsuit. Since the lawsuit was not frivolous, standard tasks in responding to the lawsuit cannot be the result of frivolous conduct of opposing counsel.

On August 27 and July 18, 2010, Martens + Associates prepared a settlement offer and reviewed the Roses' settlement offer. On October 5, 6, 10, 16, and 17, 2011, Martens + Associates engaged in communications with Robert Mitchell and FMS about settlement and possible mediation. This work is standard work performed when responding to a lawsuit. Since the lawsuit was not frivolous, standard tasks in responding to the lawsuit and attempting to settle the lawsuit cannot be the result of frivolous conduct of opposing counsel. The October 2011 settlement discussions likely involved resolving the sanctions against Robert Mitchell rather than the lawsuit between the Roses

85

and FMS. Still this work is not compensable, since we have reversed twice the sanctions amount. Thus, engaging in settlement negotiations was a reasonable task. The record contains no evidence that, during the negotiations, Mitchell engaged in bad faith.

On September 3, 8, 22, 24, 26, and 28, 2010, Martens + Associates drafted discovery requests for submittal to the Roses. This work is standard work performed when responding to a lawsuit. Since the lawsuit was not frivolous, standard tasks in responding to the lawsuit cannot be the result of frivolous conduct of opposing counsel.

On September 11 and November 3, 2010, Steven Stolle communicated with Robert Mitchell about FMS' corporate status and a proposed protective order. On November 4, Martens + Associates communicated with the court clerk about filing the order. On November 15, the law firm reviewed the executed order. FMS could recover for time its attorneys spent in work as a result of Robert Mitchell's delay in signing the protective order. But recovery would not include time spent in drafting the order, reviewing the signed order, or filing the order. Those tasks would be performed even without a delay. FMS provides no accounting to show work performed specifically because of a delay in Robert Mitchell's signing the stipulation.

On September 14, 26, and 27, November 17, December 6, 2010, and March 24, 2011, Martens + Associates accounted for time spent in preparing and filing a notice of unavailability of counsel, preparing a filing a withdrawal of a notice, and reviewing a notice of unavailability sent by Robert Mitchell. This work is standard work performed

when responding to a lawsuit. Since the lawsuit was not frivolous, standard tasks in responding to the lawsuit cannot be the result of frivolous conduct of opposing counsel.

On October 1, 2010, Martens + Associates engaged in legal briefing regarding state and federal analog statutes. On November 10, 2010, Martens + Associates engaged in further substantive legal briefing. This work is standard work performed when responding to a lawsuit. Since the lawsuit was not frivolous, standard tasks in responding to the lawsuit cannot be the result of frivolous conduct of opposing counsel.

On October 29 and November 1, 2010, Martens + Associates reviewed and analyzed the Roses' discovery responses. The trial court found Robert Mitchell to have engaged in bad faith when responding to requests for production 2 and 6 and interrogatories 10, 17, 20, 23, and 25. The law firm does not segregate any time spent in responding to these discovery requests. Therefore, we deny recovery for the time spent in reviewing discovery responses. The review of discovery responses is a standard work task in a lawsuit.

On October 21, 22, 28, and 30, and November 5, 8, and 19, 2010, Martens + Associates billed for time spent in communicating with Robert Mitchell, a court reporter, and FMS concerning deposition dates and for time spent in preparing deposition notices. The firm also briefed recovery of deposition costs on December 7, 2010. This work is standard work performed when responding to a lawsuit. Since the lawsuit was not frivolous, standard tasks in responding to the lawsuit cannot be the result of frivolous

87

conduct of opposing counsel. The trial court found Robert Mitchell to have misrepresented facts when claiming that the Roses needed to deposed on separate days. Nevertheless, the law firm does not identify any time spent discussing whether the Roses would be deposed on the same day.

On November 5, 11, and 12, 2010, Martens + Associates accounted for time spent in preparing for and conducting the deposition of Gregory Rose. This work is standard work performed when responding to a lawsuit. Since the lawsuit was not frivolous, standard tasks in responding to the lawsuit cannot be the result of frivolous conduct of opposing counsel.

In a November 23, 2010 billing entry, Martens + Associates mentions the review of a second amended complaint filed in Oklahoma courts. We are not aware of any lawsuit filed in Oklahoma and thus deny any recompense for this task. FMS does not explain how this entry relates to any harassing or bad faith conduct of Robert Mitchell.

On October 28, 29, and 31, November 1, 15, 16, 17, 18, 22, 23, 24, 29, and 30, and December 1, 2, 2010, and February 2, 2011, Martens + Associates reviewed the Roses' motion for summary judgment, prepared FMS' cross motion for summary judgment, prepared a response to the Roses' summary judgment motion, communicated with FMS and its insurance carrier regarding the motions, communicated with the clerk regarding FMS' motion for summary judgment, attended a summary judgment motion hearing, and prepared a summary judgment order. This work is standard work performed

when responding to a lawsuit. Since the lawsuit was not frivolous, standard tasks in responding to the lawsuit cannot be the result of frivolous conduct of opposing counsel.

On December 1 and 2, 2010, and March 18 and 22, and April 26, 27, 2011, Martens + Associates bills time for reviewing rules and preparing a motion for default because of the Roses' failure to file an answer to its counterclaim, communicating with Robert Mitchell and the court clerk with regard to the default, and preparing and filing an order of dismissal. This work is standard work performed when responding to a lawsuit. Since the lawsuit was not frivolous, standard tasks in responding to the lawsuit cannot be the result of frivolous conduct of opposing counsel. The work is not the result of any bad faith conducted found by the trial court.

On December 1 and 8, 2010 and January 10, 12, 13, 17, 19, 20, 24, 25, 26, 27, 28 and 31, February 2, 3, 4, 8, 9, 10, 11, 14, and 15, March 1 and 15, April 13, July 15, 18, 20, 22, and 25, August 9, 15, 26, 26, 29, 30, and 31, September 1, 13, 14, 26, 27, 28, and 29, and October 3, 4, 10, 17, 19, 2011, Martens + Associates engaged in legal research for a CR 11 and CR 26(g) sanctions motion, communicated with FMS regarding a sanctions motion, prepared a motion for sanctions, communicated with the superior court clerk and Robert Mitchell regarding the motion, prepared orders granting sanctions, reviewed Robert Mitchell's response to the motion for sanctions, attended the hearing on the motion for sanctions, prepared declarations of costs and fees, reviewed and responded to Robert Mitchell's challenge to the fees and costs, briefed a lodestar fee submittal,

89

reviewed a letter from Mark Case, reviewed correspondence from the trial judge, reviewed local rules, and reviewed court rulings. FMS prevailed in part on this motion. Robert Mitchell prevailed in part on this motion, since this court has held that the lawsuit was not frivolous. FMS sought recovery of substantially all of its reasonable attorney fees and costs. This court is granting FMS only a fraction of FMS' request.

If both parties prevail on major issues, there may be no prevailing party. *Smith v. Okanogan County*, 100 Wn. App. 7, 24, 994 P.2d 857 (2000). When there is no prevailing party, neither party is entitled to attorney fees. *Phillips Bldg. Co. v. An*, 81 Wn. App. 696, 702, 915 P.2d 1146 (1996). These principles are not directly on point, since the motion for sanctions could be considered one issue. FMS prevailed in part on this issue, but Robert Mitchell also in part, if not substantially in part, prevailed by significantly reducing the amount of sanctions sought. We consider the purpose behind the principles to apply in the situation when a party only recovers a small amount that it seeks and the opposing party substantially lessens the amount sought. Thus, we deny FMS reimbursement of fees and costs incurred in litigating its motion for sanctions, except to the extent already discussed.

On January 28, 2011, Steven Stolle spent .6 hours preparing the motion for sanctions and reviewing service of the Roses' motion for reconsideration. FMS could recover time spent in responding to the motion for reconsideration. Nevertheless, since

90

Martens + Associates does not segregate the time spent on the motion for reconsideration, we do not allow any recovery for this time.

Martens + Associates agreed that FMS would not seek recovery for fees incurred in responding to a possible renote of the Roses' motion for reconsideration. Therefore, we deny recovery for time spent on this task on January 31, 2011.

On March 23 through 25, 2011, Leehwa Kim-McFadden, of Martens + Associates spent 1.5 hours in preparing a surreply in support of the motion for sanctions and in a motion for voluntary dismissal of the counterclaim. Since Kim-McFadden did not segregate between the two tasks, we do not award compensation for this time. On March 27, June 21, July 13 and 26, August 9 and 30, and September 25, 2011, Richard Martens engaged in fact investigation and communicating with FMS for 3.4 hours. Since Martens does not attribute the fact investigation to the bad faith pleadings filed by Robert Mitchell, we do not award compensation for this time.

On October 17, 2011, Martens + Associates spent .2 hours in reviewing an oath appointing Judge Baker as a judge pro tempore. The appointment of Judge Baker was the result of her retirement not the result of bad faith conduct of or frivolous pleadings filed by Robert Mitchell. Therefore, we deny recovery for this task.

On November 9, 2011, Richard Martens communicated with James Studt. FMS does not explain how this communications related to this lawsuit, let alone resulted from bad faith conduct of Robert Mitchell. Therefore, we deny reimbursement for this task.

On November 9, 2011, Robert Mitchell filed his first notice of appeal. Mitchell prevailed in part on appeal. On remand, the trial court again committed error and granted FMS an excessive award. Mitchell filed this second appeal and prevails again in part. All of the work performed by Martens + Associates after November 9, 2011 relates to the appeal and remand. We deny FMS any recovery for fees incurred after November 9, 2011.

FMS seeks recovery of costs and expenses incurred in this litigation. The accounting provided does not permit us to determine what costs are attributed solely to frivolous pleadings filed by or bad faith and harassing conduct of Robert Mitchell. Therefore, we deny costs and expenses.